Raymond **KUTZ**, Plaintiff-Appellant,

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS**, a corporation, Defendant-Respondent.

No. 31183.

St. Louis Court of Appeals.

Missouri.

April 16, 1963.

Rehearing Denied May 14, 1963.

Robert Nagel Jones, St. Louis, Norman R. Jones, Kansas City, for appellant.

Robert C. Ely, St. Louis, for respondent.

BRADY, Commissioner.

This is an action filed by appellant, hereinafter called plaintiff, against the re-

spondent, hereafter called defendant, under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et sequitur. The jury found in favor of plaintiff and assigned his damages at $3,500.00. Defendant's motion for judgment in accordance with its motion for directed verdict was sustained and this appeal followed.

The plaintiff's petition originally alleged "The agent, servant and employee, Frank Fields, of the defendant, who was required to assist the plaintiff in repairing said leak, while in the due course and scope of his employment, negligently and carelessly failed and omitted to hold the iron pick he was using in a secure manner and permitted the same to hit plaintiff when in the exercise of ordinary care he would not have done so." At the time of trial, plaintiff obtained leave of court to amend his petition and did so by adding subparagraph 5(d) to his petition which reads as follows: "The agent, servant, and employee of defendant, Frank Fields, was supervising and directing the plaintiff in the performance of his duties and while in the course of his employment with defendant and when in the furtherance of defendant's business did intentionally assault the plaintiff by striking the plaintiff with a pick axe."

Plaintiff is a pipefitter and in addition to his regular work on December 20, 1957, was asked to work overtime to repair a steam leak. In order to repair the steam leak, a ditch had to be dug. On this job were four laborers, the plaintiff and one other pipefitter, and Frank Fields, the leader or foreman of the gang. What happened can best be stated in plaintiff's own language and that of his witnesses. Plaintiff testified that: "A. Well, after they dug the trench open and had the slab off the concrete Zmailo was in the ditch with a suction hose trying to get the water out of there so we could go to work, the pipefitters could go to work. In the meantime the suction hose either stopped up or the pump wasn't pumping and Zmailo was shaking the hose to try to get it to work. It was quite awhile he was doing that and Mr. Fields—I don't know—he said, 'Throw it out, throw it out,' and Zmailo didn't even —I took it he didn't understand him and I said, 'John, he said to throw that hose out.' So, John just picked the hose up and throws it out and when he does Fields said, 'I didn't tell him to throw the hose out,' and then I used some—Q. Go ahead and tell them. What did you say? A. I called him a (obscenity) liar and he picked up the pick and he said, 'I'm getting tired of you telling me that,' and I said, 'Well, you are, if you didn't say that to the man,' and that's when he hit me." The other pipefitter on the job described the name calling and then testified that Fields said "Take that back" and he said, "No. I won't," and plaintiff called Fields the same name again whereupon Fields jumped across the ditch and hit the plaintiff with a pick. The witness Lovett, a laborer on the job, testified that when the plaintiff called Fields the name, Fields replied " * * * Don't call me that no more" and he said, "I'm tired of hearing that" whereupon the plaintiff again called Fields the name.

The use of such language is common among these employees according to the plaintiff and his witnesses who also testified they had heard Fields use this word on other occasions.

The petition was filed in December, 1958 but the case was not completed on the trial level until December, 1961. It was submitted to this court during our December, 1962 docket.

The plaintiff's verdict-directing instruction required the jury to find, among other things, that " * * * Fields, then and there acting in the course of his duties for defendant and directing and supervising the said work in furtherance of the defendant's business, if so, did strike the plaintiff. * * *" Defendant offered and the trial court gave an instruction requir-

ing the jury to find in favor of defendant if they found " * * * that the act of Frank Fields in striking plaintiff had no connection with the duties of Frank Fields as an employee of defendant, and that such act was not intended to and did not promote or further the business of defendant, and that such an act. was personal between Frank Fields and the plaintiff. * * * "

The defendant's motion for a directed verdict was upon the grounds that this evidence was insufficient to authorize submission to the jury of the issue that Fields' action in striking the plaintiff with the pick was in furtherance of defendant's business. The trial court's action with respect to defendant's after-trial motion was on this same ground and that is the only question presented for our determination.

■■ It will serve no useful purpose to construe the word "negligence" as used in Title 45, § 51, U.S.C.A. Regardless of what construction we would put upon it the word as used in the Federal Employers' Liability Act now includes an assault, provided that assault was committed in the course of the discharge of the employee's duties and in furtherance of the work of the employer's business. Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L. Ed. 1082. In determination of this issue, the plaintiff is to be given the benefit of every doubt. Ratigan v. New York Central Railway Co., 2 Cir., 291 F.2d 548.

■ The plaintiff was not working when this incident occurred and there is a total lack of evidence to show that Fields' act could reasonably be said to have been done in a desire to hurry up the work. Compare Jamison v. Encarnacion, supra, where the Supreme Court of the United States specifically found that the assault was made " * * * to hurry him about the work."

Neither was there any question here as to disobedience of an order. In his brief plaintiff asserts that "In the present case the assault by Fields, the foreman, could certainly be an act of discipline. * * * A jury could reasonably have found that the assault was to prevent appellant and others from disputing this work order and similar ones in the future." The fallacy of that argument is that when called this name Fields' reply according to plaintiff's own testimony was, "I'm getting tired of you telling me that" and only upon plaintiff stating "Well, you are, if you didn't say that to the man" did Fields strike plaintiff. Fields' very language and the plaintiff's reply clearly show the personal nature of this occurrence and negates any desire or intent at discipline. Certainly there is no issue presented here as to discipline for disobedience to a work order for plaintiff's own contention is that the order was given and obeyed. There is no evidence upon which the jury could reasonably make the finding required of it by plaintiff's verdict-directing instruction that the act of Fields in striking the plaintiff was in furtherance of the defendant's business. The trial court should have sustained the defendant's motion for a directed verdict and correctly sustained the defendant's later motion for judgment in accordance with that motion for a directed verdict. The judgment should be affirmed and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

RUDDY, Acting P. J., and PHIL H. COOK and SAM C. BLAIR, Special Judges, concur.