Floyd SOWARDS, Jr., Appellant,

v.

CHESAPEAKE AND OHIO RAILWAY COMPANY, a corporation, Appellee.

No. 77–2055.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1978.

Decided Aug. 3, 1978.

James Allan Colburn, Huntington, W. Va. (Baer Napier & Colburn, Huntington, W. Va., on brief), for appellant.

Richard J. Bolen, Huntington, W. Va. (William C. Beatty, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and RUSSELL and HALL, Circuit Judges.

PER CURIAM:

Floyd Sowards, Jr. brought this action for damages against the Chesapeake and Ohio Railway Company under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, et seq., for serious head injuries sustained as a result of an allegedly intentional shooting in the physicians' living quarters at a hospital operated by the Chesapeake and Ohio Railway Employees' Hospital Association in Huntington, West Virginia. At the time of the shooting, plaintiff was employed by the hospital as a therapist and was sleeping in a physician's room with

the physician's permission during a break in his regular working hours. The shooting followed an altercation between plaintiff and a second physician who had recently complained to plaintiff's supervisor about plaintiff's use of his private room. After review of extensive deposition testimony, the district court granted defendant's motion for summary judgment finding the plaintiff failed to establish any factual basis upon which the defendant railway could be held liable under FELA. We affirm.

The court entered judgment for defendant on the issue of negligence without reaching two other issues in the case concerning requirements under FELA that plaintiff's hospital employer be sufficiently controlled by the defendant to make plaintiff an "employee" of a railroad, *Kelly v. Southern Pacific Co.,* 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974), and that plaintiff's employment be in furtherance of the defendant's business of "interstate transportation," *Reed v. Pennsylvania Railroad Co.,* 351 U.S. 502, 76 S.Ct. 958, 100 L.Ed. 1366 (1956). Because we agree with the district court's entry of judgment for defendant on the issue of negligence we too make no decision regarding these issues, one of which was previously before us in *Sowards v. Chesapeake and Ohio Railway Company,* No. 73–2214 (4th Cir. April 1, 1974).

The facts of record before the district court on the issue of negligence were based on the depositions of the plaintiff, his immediate supervisor and an orderly on duty at the time of the shooting. When read in light most favorable to the plaintiff, we think this testimony reveals no basis upon which a jury could reasonably find negligence by plaintiff's hospital employer which contributed in whole or in part in his injury.

The deposition testimony reveals the physicians' living quarters were in the same building as the hospital but were segregated from all working areas of the hospital. These living quarters were provided by the hospital only for its resident doctors. Plaintiff regularly used these quarters because he was on friendly terms with two doctors who invited him to use their private rooms and other vacant rooms in the living quarters at his leisure. Plaintiff testified that he never asked his immediate supervisor or any other hospital official for authority to use the physicians' living quarters but that his supervisor and other hospital officials were aware of and did not prohibit his use of those quarters.

Plaintiff testified that it was general knowledge in the hospital that he took his two physician friends hunting for game and that guns were kept in the living quarters. He said one of them had an "arsenal" including rifles, shotguns and pistols. He admitted seeing a pistol at the hospital on at least two occasions before the shooting incident. Sometime before the shooting, plaintiff's supervisor told him that one of the physicians was angry about plaintiff's use of his private room. The plaintiff told her that that puzzled him because that doctor had given him a key to his room. Soon thereafter, when plaintiff confronted the doctor concerning his conversation with the supervisor, he returned the key and, according to plaintiff, "verbally massacred" the physician in the disagreement which ensued. Finally, plaintiff testified that he was not certain who shot him but thought it was the doctor with whom he had had the argument and that he never saw that doctor "show any emotion at all."

 The beginning point for consideration of liability under FELA must be to note that courts have always liberally construed its requirements in favor of plaintiffs because FELA was designed for the benefit and protection of railroad employees. *Ambold v. Seaboard Air Line Railroad Co.,* 345 F.2d 30 (4th Cir. 1965), cert. denied, 382 U.S. 831, 86 S.Ct. 70, 15 L.Ed.2d 75 (1965). In order to establish an employer's liability under FELA, the employee must show that he was injured while in the scope of his employment, which employment is in furtherance of the railroad's interstate transportation business, that his employer was negligent, and that his employer's negligence played some part in causing the injury for which compensation is sought under FELA. 45 U.S.C. § 51.

In the unusual FELA case where injuries have been intentionally inflicted, it has been held that negligence of the employer can be established under one of two theories. First, under what has been termed a "direct" negligence theory, if the employer could reasonably foresee that plaintiff would be assaulted, it is negligence to fail to prevent the assault whether or not the assault was intentional or criminal misconduct. *Harrison v. Missouri Pacific Railroad Co.,* 372 U.S. 248, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963). Second, under a theory based on agency principles where the intentional wrong was performed by another employee, it has been held that negligence can be imputed to the employer if the intentional wrong was perpetrated within the fellow employee's scope of employment and in furtherance of the employer's business. *Slaughter v. Atlantic Coast Line Railroad Co.,* 112 U.S.App.D.C. 327, 302 F.2d 912 (1962), cert. denied, 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed.2d 65 (1962); *Jester v. Southern Ry. Co.,* 204 S.C. 395, 29 S.E.2d 768 (1944), cert. denied, 323 U.S. 716, 65 S.Ct. 44, 89 L.Ed. 576 (1944). But where one employee assaults another employee for the sole purpose of satisfying his own temper or spite, the employer cannot be held liable for such a wanton act. *Davis v. Green,* 260 U.S. 349, 43 S.Ct. 123, 67 L.Ed. 299 (1922); *Kutz v. Terminal Railroad Association of St. Louis,* 367 S.W.2d 55 (Mo.1963); *Hill v. Gulf, Mobile & Ohio Railroad Co.,* 238 Miss. 811, 120 So.2d 157 (1960).

In the case before us, giving plaintiff the benefit of every doubt, we can find no factual basis upon which a jury could reasonably find his employer negligent under FELA.

First, under a "direct" negligence theory, his employer could not be found negligent for hiring the physician who allegedly shot plaintiff, because plaintiff admitted he was not known as an emotional person. Also, his employer could not be found negligent in allowing guns to be maintained in private living quarters which were under the control of their residents because the possession of firearms is not *per se* illegal or dangerous. If plaintiff had been poisoned with a drug or stabbed by a knife used for hospital business, the mere availability of those instruments could not constitute negligence if the harm was intentionally inflicted. The hospital employer could not be negligent in failing to warn plaintiff of the presence of the instrumentality causing his harm because plaintiff admitted that before the shooting incident he had seen a pistol in the physicians' living quarters.

Second, under a theory based on agency principles, negligence could not be imputed to the hospital employer for acts performed by a fellow employee under the facts of plaintiff's case. The clandestine nature of the alleged intentional shooting indicates that it could not possibly be considered as one performed within the fellow employee's scope of employment or in furtherance of hospital business. Also, plaintiff admits that the assault was personal in nature because he testified that he thinks it was precipitated by an altercation involving his use of a doctor's private room and that his practice of using the physicians' living quarters arose out of his personal relationship with the doctors who lived there.

In effect, plaintiff's case rests solely upon the fact that he was mysteriously shot on his employer's premises during a break in his working hours, by another employee with whom he was not working, in an area which was segregated from all working areas of the hospital and which was provided for the personal, private, and unsupervised use of employees other than plaintiff. Based upon such facts, a jury could not with reason find his employer negligent toward plaintiff, and therefore, the entry of summary judgment by the district court in favor of defendant is

*AFFIRMED.*