**Paul Leonard JONES, Jr.,**
**Plaintiff-Appellant,**

v.

**CONSOLIDATED RAIL CORPORA-**
**TION, a.k.a. Conrail,**
**Defendant-Appellee.**

No. 84–3503.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1985.

Decided Sept. 4, 1986.

Marshall I. Nurenberg, Lead Counsel (argued), Harlan M. Gordon, Komito, Nurenberg, Plevin, Jacobson, Heller & McCarthy, Cleveland, Ohio, for plaintiff-appellant.

Forrest A. Norman and Thomas E. Dover (argued), Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, for defendant-appellee.

Before MERRITT and JONES, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

This action was brought by Paul Leonard Jones against Consolidated Rail Corporation (Conrail) under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* (1982). Jones appeals the judgment entered on a jury verdict in his favor, arguing that the district court erred in instructing the jury on mitigation of damages and contributory negligence, that the award of damages was inadequate and against the weight of the evidence, and that the district court erred in denying him a directed verdict on the issue of contributory negligence. Because we find reversible error in the jury instructions, we reverse.

On July 1, 1980, Paul Leonard Jones was employed by Conrail in its maintenance department as a "trackman," a position that involves heavy labor in repairing train tracks. After being transported from one job site to another, Jones allegedly injured his back seriously when he slipped and fell as he exited the company's bus. Although his treating physician wrote in 1982 that Jones could return to his former employment, the company physician determined that Jones should not return to the heavy

labor of a trackman, and the company did not reemploy him in that position. Jones has not worked since that time. He brought suit against Conrail, alleging that his disabling back injury was caused by the negligence of a Conrail supervisor who allowed some rail anchors—pieces of metal about five or six inches long—to be placed on the bus steps for transportation to the next repair site.

At trial, Jones presented evidence that the supervisor directed that the anchors be placed on the landing and steps of the bus, that there was no handrail at the exit, and that the side door was blocked by a cart. He argued that the supervisor knew or should have known of the dangers of such circumstances and that the equipment on the steps caused Jones to slip and fall through no fault of his own.

Conrail presented evidence that there was no room for the anchors in the usual box for equipment, that the employees were all aware that the anchors were being transported on the bus steps, that the cart in front of the other door was easily moved, that there was sufficient room to walk around the anchors, that there was a handrail and Jones failed to use it, that Jones was carrying a ballast fork as he exited, and that he was watching the steps as he descended and thus presumably should have seen and avoided the equipment.

In regard to damages, Jones alleged that he was completely unable to work at any type of employment. He presented the opinion of his surgeon, who testified that the accident caused Jones' back injury and that surgery was required and performed. The physician testified that Jones was disabled from performing heavy labor, and that, considering Jones' extremely low I.Q., he could not perform any other kind of work. The physician explained that when he had written to Conrail that Jones could return to work, he had meant a trial period to determine if Jones could handle the work.

In rebuttal, Conrail elicited testimony regarding the hospital records from the initial hospital treatment and some subsequent treatments, which indicated that there was no serious injury to Jones' back. Conrail questioned the surgeon about his notes, which stated that the state disability bureau had repeatedly asked Jones to appear for an evaluation of skills and rehabilitation, and that the surgeon had strongly urged Jones to attend, but that Jones had refused because he did "not want to be bothered." The company's physician who had recommended that Jones not resume heavy labor on the tracks also testified. He stated his belief that, while Jones could not perform heavy labor, he could do lighter or more sedentary work such as driving a bus or being a janitor. Jones testified that he had not applied anywhere for a job. The jury returned a general verdict of $168,736 in favor of Jones.

■ On appeal Jones contends that the district court erred in its instructions to the jury on mitigation of damages. We review jury instructions as a whole to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision. *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1181 (6th Cir.1983). A judgment on a jury verdict may be vacated when the instructions, viewed as a whole, were confusing, misleading, and prejudicial. *DSG Corp. v. Anderson*, 754 F.2d 678, 679 (6th Cir.1985). It is not error to refuse to give a requested instruction that correctly states the law, as long as the instructions actually given fairly and adequately cover the material issues. *Carruba v. Transit Casualty Co.*, 443 F.2d 260, 264 (6th Cir.1971). It is error, however, to instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue. *Dixon v. Penn Central Co.*, 481 F.2d 833, 837 (6th Cir.1973); *see also Bucyrus-Erie Co. v. General Products Corp.*, 643 F.2d 413, 420 (6th Cir.1981).

The court's charge on the issue of mitigation of damages caused by loss of past earnings was as follows:

With respect to the loss of earnings in the past, you are instructed that if plaintiff could have worked in the past but did not, you must not award him damages for loss of whatever earnings for the period of time during which he might have worked. The issue in this respect is not whether plaintiff did work but whether or not he could have worked during all or any part of the time in question.

The instruction concerning mitigation of damages from diminished capacity to work in the future was as follows:

Impairment of earning capacity is to be distinguished from loss of wages and earnings. Impairment in earning capacity means the diminished ability by reason of physical incapacity or impairment of a person to obtain work or earn money which said person would otherwise be able to [d]o but for the physical incapacities or impairments resulting from the injuries.

An injured party is under a legal obligation to mitigate his damages, that is, to minimize the economic loss resulting from his injury, by resuming gainful employment as soon as such can be reasonably done, if such is available. If he does not resume available employment even though he is physically able to do so, such person may not recover damages for earnings lost after the date on which he was or reasonably could have been able to return to some form of gainful employment to the extent that such damages could have been mitigated.

Jones complains that these instructions failed to place the burden on the defendant to prove the plaintiff's failure to mitigate his damages. He further contends that the instructions did not clearly explain that, even if the jury were to find that he could have obtained some employment in the past and/or had some capacity to work in the future, he was still entitled to the *difference* between his former income and the income he could receive from the other employment.

We agree that the defendant did have the burden of proof concerning plaintiff's failure to mitigate damages. The manner of determining damages in an action under the FELA must be settled according to general principles of law as administered in the federal courts. *See Chesapeake & Ohio Ry. Co. v. Kelly*, 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916). We recognize the general principle that a plaintiff has the burden of proving his damages. *See, e.g., Shupe v. New York Central Sys.*, 339 F.2d 998, 1000 (7th Cir.), *cert. denied*, 381 U.S. 937, 85 S.Ct. 1769, 14 L.Ed.2d 701 (1965). We also acknowledge the well-established rule that an injured plaintiff has a duty to mitigate his damages. *See Baker v. Baltimore & Ohio R.R. Co.*, 502 F.2d 638, 644 (6th Cir.1974). However, once it is established that a duty to mitigate is present, the burden nevertheless falls on the wrongdoer to show that the damages were lessened or might have been lessened by the plaintiff. *See generally* Annot., 134 A.L.R. 242, 243 (1941) (citing many federal and state cases in support of this rule). The seminal case placing the burden on the defendant to prove mitigation of damages was decided by this circuit over eighty years ago in the context of a breach of contract suit. *Lillard v. Kentucky Distilleries & Warehouse Co.*, 134 F. 168, 178 (6th Cir.1904). Since that time, other federal courts have also applied this principle in a variety of both contract and tort cases. *See, e.g., Hanna v. American Motors Corp.*, 724 F.2d 1300, 1306–07 (7th Cir.) (violators of Vietnam Era Veterans' Readjustment Act have burden to prove employee's failure to mitigate), *cert. denied*, 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed.2d 821 (1984); *Tennessee Valley Sand & Gravel Co. v. M/V Delta*, 598 F.2d 930, 933 (5th Cir.) ("burden of showing that victim of tortious conduct failed to minimize his damages rests with the wrongdoer"), *modified and reh'g denied*, 604 F.2d 13 (5th Cir.1979); *Tatro v. Texas*, 516 F.Supp. 968, 980 (N.D.Tex.1981) (wrongdoer has burden of showing failure to minimize damages in Education of All Handicapped Children Act case), *aff'd*, 703 F.2d

823 (5th Cir.1983); *Ballard v. El Dorado Tire Co.*, 512 F.2d 901, 905 (5th Cir.1975) (burden of proof on employer to demonstrate similar employment available).

■ In considering such cases, we are mindful that, in light of the remedial purpose of the FELA, we must liberally construe the Act in favor of the injured plaintiff. *See, e.g., Green v. River Terminal Ry. Co.*, 763 F.2d 805, 806 (6th Cir.1985); *Sowards v. Chesapeake & Ohio Ry. Co.*, 580 F.2d 713, 714 (4th Cir.1978). Consequently, we see no reason, and defendant has presented us with no reason, to create in FELA cases an exception to the general rule that the defendant has the burden of proving that the plaintiff could, with reasonable effort, have mitigated his damages. *Cf. Chicago, Rock Island and Pacific R.R. Co. v. Powers Foundation Drilling Co.*, 294 F.Supp. 921, 927 (W.D.Okla.1968) (defendant in FELA case has burden of proving plaintiff contributorily negligent).

■ The jury instructions failed to place this burden of proof on the defendant. At the beginning of the jury instructions the court stated that the burden of proof is on "the party who asserts the affirmative of an issue." However, neither the jury instructions nor the questioning during trial made it clear who was asserting "the affirmative" with respect to plaintiff's ability to mitigate damages. Indeed, given this appeal, the parties obviously did not even agree about who was asserting "the affirmative" of that issue, and so it seems unlikely that the unguided jury was able to perceive the correct placement of the burden of proof. Because this may have affected the damages award, the district court's failure to instruct on the burden of proof is reversible error. *See, e.g., Castillo v. Givens*, 704 F.2d 181, 195 (5th Cir.) (burden of proof always of major importance), *cert. denied*, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983).

■ Although the jury instruction on mitigation of damages from diminished capacity to work in the *future* adequately stated that damages should be reduced only by the amount the plaintiff could earn in a new job, the instructions on mitigation of damages caused by loss of past earnings did not adequately explain the law on that issue. As quoted *supra*, the instructions stated that "you must not award him damages for loss of whatever earnings for the period of time during which he might have worked." "Whatever earnings" could refer just as easily to his previous railroad job's wages as to his potential new job's wages. Therefore, the charge did not adequately inform the jury that the plaintiff was entitled to the difference between what he would have earned on the railroad and what he might have earned in another position. Because this may have affected the award of damages, it is also reversible error.

■ Jones' next assignment of error is that the district court erred in failing to direct a verdict on the issue of contributory negligence. In determining whether the district court erred in refusing to direct a verdict, we must view the evidence in the light most favorable to the party opposing the motion. *Steele v. Louisville & Nashville R.R. Co.*, 506 F.2d 315, 317 (6th Cir. 1974). Viewing the evidence in favor of Conrail, we conclude that a reasonable jury could have believed that Jones' acts contributed to causing the injury, and we therefore find that the district court did not err in refusing to direct a verdict.

■ Jones also challenges the jury instructions on contributory negligence, asserting that the instruction on contributory negligence amounted to an instruction on assumption of risk, a defense that may not be raised in an FELA case. 45 U.S.C. § 54 (expressly prohibiting the defense that the employee assumed the risk); *Tiller v. Atlantic Coast Line R.R. Co.*, 318 U.S. 54, 58, 63 S.Ct. 444, 446, 87 L.Ed. 610 (1943). We have reviewed the instructions on contributory negligence and find that the jury instructions on contributory negligence were correct and sufficient, notwithstanding the fact that they might have been clearer with additional instructions.

In view of our holding in regard to the issue of mitigation of damages, we need not reach the question of whether the district court abused its discretion by refusing to grant a new trial on the grounds that the verdict was against the great weight of the evidence.

We therefore REVERSE the judgment of the district court and REMAND this case for proceedings consistent with this opinion.

BAILEY BROWN, Senior Circuit Judge, concurring in the result.

As the panel's opinion states, the district court did not, in spite of Jones's exception thereto, make clear to the jury in its charge that the burden was on the defendant to show that Jones failed to mitigate his damages. That is to say, it did not make clear that the burden was on the defendant to show that, after his injury and prior to the trial, Jones was able to do some work and did not make a reasonable effort to find and do such work. Although, as the panel's opinion recognizes, our court has held that Jones had the duty to mitigate his damages, *Baker v. Baltimore & Ohio R.R.*, 502 F.2d 638, 644 (6th Cir.1974), the opinion correctly holds that the burden was on the defendant to show that Jones had not fulfilled that duty. While the panel's opinion does not cite an FELA case that so holds (and I have not been able to find one), I agree with the conclusion that the law in analogous situations supports this placing of the burden, and moreover, as the panel's opinion points out, the FELA is liberally construed in favor of the injured railroad employee.

For completeness, I am of the view that the district court's charge (and the panel's opinion) does not make a sufficiently clear distinction between separate items of damage resulting from the injury, i.e., (a) loss of income incurred after the accident and prior to the trial and (b) damage as a result of a decrease in earning capacity which will reduce future income. The panel's opinion, as I understand it, and this concurrence are granting a new trial only on the basis of an error in the charge to the jury with respect to damages from loss of income prior to the trial.