856 F.2d 193
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Floyd H. CORBIN, Plaintiff-Appellant,
v.
NORFOLK & WESTERN RAILWAY COMPANY, Defendant-Appellee.
 No. 86-2025.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1988.
 
 Before ENGEL, Chief Judge, and KEITH and RYAN, Circuit Judges.
 ENGEL, Chief Judge.
 
 
 1
 Plaintiff Floyd Corbin appeals from a judgment entered by the district court upon a jury verdict awarding him $247,350 damages for his disability claim brought against Norfolk & Western Railway Company under the Federal Employers' Liability Act (FELA), 45 U.S.C. Sec. 51 et seq. (1982). Corbin claims the damages awarded were inadequate as a result of numerous errors allegedly committed by the district court during the course of the trial. Because we conclude that the court erred in denying Corbin the opportunity to present a vocational expert as a rebuttal witness on the issue of mitigation of damages, and because we are unable to find such error harmless, we are compelled to remand the case for retrial on the sole issue of damages. The railroad does not appeal the finding of liability on its part.
 
 I.
 
 2
 Corbin was employed with defendant railroad as a trainman and was on duty when he became injured from a fall on debris while crossing Norfolk & Western's track. He claimed that the fall triggered an incurable and progressive back condition rendering him completely disabled. Following a full trial, the jury concluded that plaintiff had suffered total damages of $291,000. In accordance with the mandatory rules set forth in FELA for reduction of an award based on contributory negligence, 45 U.S.C. Sec. 53, however, the jury found that plaintiff's own negligence was 15% responsible for his injury. A judgment in the reduced amount of $247,350 was entered on October 2, 1986.
 
 
 3
 The law is well-established that in actions brought under FELA, the defendant railroad is entitled to introduce as part of its defense evidence that the plaintiff employee could have and should have mitigated his damages. As Judge Jones of our court has observed:
 
 
 4
 We agree that the defendant did have the burden of proof concerning plaintiff's failure to mitigate damages. The manner of determining damages in an action under the FELA must be settled according to general principles of law as administered in the federal courts. See Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916). We recognize the general principle that a plaintiff has the burden of proving his damages. See, e.g., Shupe v. New York Central Sys., 339 F.2d 998, 1000 (7th Cir.), cert. denied, 381 U.S. 937, 85 S.Ct. 1769, 14 L.Ed.2d 701 (1965). We also acknowledge the well-established rule that an injured plaintiff has a duty to mitigate his damages. See Baker v. Baltimore & Ohio R.R. Co., 502 F.2d 638, 644 (6th Cir.1974). However, once it is established that a duty to mitigate is present, the burden nevertheless falls on the wrongdoer to show that the damages were lessened or might have been lessened by the plaintiff. See generally Annot., 134 A.L.R. 242, 243 (1941) (citing many federal and state cases in support of this rule). The seminal case placing the burden on the defendant to prove mitigation of damages was decided by this circuit over eighty years ago in the context of a breach of contract suit. Lillard v. Kentucky Distilleries & Warehouse Co., 134 F. 168, 178 (6th Cir.1904). Since that time, other federal courts have also applied this principle in a variety of both contract and tort cases. See, e.g., Hanna v. American Motors Corp., 724 F.2d 1300, 1306-07 (7th Cir.) (violators of Vietnam Era Veterans' Readjustment Act have burden to prove employee's failure to mitigate), cert. denied, 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed.2d 821 (1984); Tennessee Valley Sand & Gravel Co. v. M/V Delta, 598 F.2d 930, 933 (5th Cir.) ("burden of showing that victim of tortious conduct failed to minimize his damages rests with the wrongdoer"), modified and reh'g denied, 604 F.2d 13 (5th Cir.1979); Tatro v. Texas, 516 F.Supp. 968, 980 (N.D.Tex.1981) (wrongdoer has burden of showing failure to minimize damages in Education of All Handicapped Children Act case), aff'd, 703 F.2d 823 (5th Cir.1983); Ballard v. El Dorado Tire Co., 512 F.2d 901, 905 (5th Cir.1975) (burden of proof on employer to demonstrate similar employment available).
 
 
 5
 In considering such cases, we are mindful that, in light of the remedial purpose of the FELA, we must liberally construe the Act in favor of the injured plaintiff. See, e.g., Green v. River Terminal Ry. Co., 763 F.2d 805, 806 (6th Cir.1985); Sowards v. Chesapeake & Ohio Ry., Co., 580 F.2d 713, 714 (4th Cir.1978). Consequently, we see no reason, and defendant has presented us with no reason, to create in FELA cases an exception to the general rule that the defendant has the burden of proving that the plaintiff could, with reasonable effort, have mitigated his damages. Cf. Chicago, Rock Island and Pacific R.R. Co. v. Powers Foundation Drilling Co., 294 F.Supp. 921, 927 (W.D.Okla.1968) (defendant in FELA case has burden of proving plaintiff contributorily negligent).
 
 
 6
 Jones v. Consolidated Rail Corp., 800 F.2d 590, 593-94 (6th Cir.1986); cf. National Labor Relations Board v. Westin Hotel, 758 F.2d 1126, 1129-30 (6th Cir.1985) (applying similar rule to wrongful discharge proceedings before the N.L.R.B.).
 
 
 7
 That the foregoing is clearly the applicable law and that the experienced district court judge was well aware of it at the outset of the trial was made apparent by the judge himself. Early in the proceedings the judge acknowledged "the duty is on the railroad to mitigate, to prove mitigation." Later, the trial judge observed: "Now if they [the railroad] open the door to a claim that he did not make a good faith effort to find a job, that he hasn't properly mitigated, I haven't heard it yet. I don't know that they are going to do that yet." Even later, "[w]e are talking here in the area of mitigation of damages, that's what this is relevant to. It's not relevant to its liability and it is not relevant to his damages except to the extent that they [railroad] claim mitigation, you know, it may be that he sought these jobs or he is not employable by the railroad." The judge appeared to continue to resist plaintiff's efforts to introduce any evidence concerning mitigation of damages during his case-in-chief: "I don't know that any of this is relevant until the railroad opens the door, ... I don't know what the railroad's argument on mitigation is going to be." And finally:
 
 
 8
 CORBIN'S COUNSEL: She [Norfolk & Western's vocational expert] puts in her report that he needs rehab service, Judge.
 
 
 9
 THE COURT: I don't care if she does. You can impeach that. You can bring in rebuttal in your case in chief, given the limitation on the defense that there is sedentary work open to him, jobs available within his existing skill range, and he has made minimal attempts to find such jobs. The testimony by Crawford and that effort is not relevant.
 
 
 10
 Now depending upon what their defense is you may offer this in rebuttal. That's what I am going to rule.
 
 
 11
 CORBIN'S COUNSEL: Can I still have him testify as to the efforts he has made?
 
 
 12
 THE COURT: No, no you will have to have it in rebuttal. There was nothing in any prior rulings that restrict that. There is nothing in my prior ruling that restricts that.
 
 
 13
 During presentation of its case-in-chief, Norfolk & Western did introduce evidence of Corbin's failure to mitigate damages. In fact, defendant Norfolk & Western introduced testimony suggesting not only that Corbin was reemployable, but more specifically that he was capable of obtaining and holding a job as an auto rental clerk, a work order sorting clerk, an expediter, a contract clerk, a classified ad clerk, or an assembler of light or small products. Each of these potential positions was discussed in depth during Norfolk & Western's direct examination of its vocational expert, including testimony on Corbin's suitability for each job, his potential salary, and the number of openings for each position in the Detroit area. It is therefore manifestly clear that at this stage in the proceedings the railroad was seeking to assert its affirmative defense that Corbin could have and should have mitigated his damages by seeking other employment at levels within his reduced capability, notwithstanding his injuries.
 
 
 14
 When time came for rebuttal, Corbin's counsel sought to introduce as a rebuttal witness the testimony of his vocational expert, Ancell. Evidently there was extended and unreported conversation in chambers between counsel and the court, but the court's final ruling was unquestionably clear:
 
 
 15
 THE COURT: I am ready to rule on the question of calling Mr. Ancell [Corbin's vocational expert] as a rebuttal witness. That is the matter before me. I think you have told me everything this morning and last evening at the charge conference.
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 With regard to the prospective of Witness Ancell, my ruling is that he may not testify for the following reasons:
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 The plaintiff chose not to introduce expert testimony on that line in his case-in-chief, to-wit: The scope of the plaintiff's ability to work at this time given his present physical limitations.
 
 
 22
 The defendant called a witness by the name of Kreski who did testify as to the limitations, and work available in the economy regarding the plaintiff's limitations. That was entirely proper defense testimony to show that the plaintiff is employable, that there is a class of job or jobs open to the plaintiff in the economy given his existing physical condition and work limitations. To allow the plaintiff now to call Ancell to testify in that same area as rebuttal is not proper. He is an expert witness. He was available in the plaintiff's case-in-chief. He was listed on the pre-trial statement as a witness for the plaintiff, and to allow him to be called at this time would (a) unduly prolong the trial, and (b) sandbag the defendant.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 I am satisfied that the Ancell testimony is not proper rebuttal since it logically belonged in the plaintiff's case-in-chief. The plaintiff was not or should not have been surprised by the testimony of the Witness Kreski, and therefore had ample opportunity to present this witness in an orderly fashion.
 
 
 26
 Norfolk & Western argues that even if the court's ruling excluding Ancell's rebuttal testimony was improper, Corbin's case on appeal is still without merit since Corbin's counsel failed to make a sufficient showing upon the record, by way of avowal or offer of proof, from which it could be determined whether any error on the part of the district court affected the outcome of the trial. It is true that a better record could indeed have been made, but under the circumstances here and in light of the cases in this circuit, we are convinced that an offer of proof was not necessary where it is evident that the trial judge was well informed of the contents of the excluded evidence. As long as the district court is presented with "a reasoned argument for the admissibility of the evidence" and is aware of the nature of that evidence, it need not be proffered. United States v. Millen, 594 F.2d 1085, 1088 (6th Cir.1979). See also Waltzer v. Transidyne General Corp., 697 F.2d 130, 134 (6th Cir.1983). We have particular difficulty finding fault with plaintiff in this regard given the trial judge's previous impatience with plaintiff's efforts to make a record, demonstrated by the following colloquy occurring earlier in the trial:
 
 
 27
 CORBIN'S COUNSEL: I have others [objections].
 
 
 28
 THE COURT: No, I am not going to spend any more time, Mr. O'Bryan. If I'm wrong, I'm wrong.
 
 
 29
 CORBIN'S COUNSEL: I think I am entitled to make the record your Honor.
 
 
 30
 THE COURT: You have made your record, sir. You have objected to my ruling. That's all you have to do. It's not the argument you present to me. It's the fact you have made the objection. I will accept the fact that you have made the argument you have brought the information to bear.... That's my ruling and I don't want to hear anything more from you.
 
 
 31
 It is not for us to say whether, under the proofs presented, the jury award was reasonable, and we make no suggestion as to what a proper award of damages might be. It is, however, altogether evident that the principal focus of the jury was the extent to which Corbin retained an ability to mitigate damages by finding other employment after his injury. Given the law of mitigation in FELA cases, and the liberality with which employees' claims are judged under FELA, see Jones v. Consolidated Rail Company, 800 F.2d at 594, we conclude that it was error for the trial judge to have excluded the testimony of witness Ancell altogether.
 
 
 32
 It is suggested that an additional reason for excluding Ancell's testimony stems from plaintiff's failure to offer the testimony during his case-in-chief, particularly since Ancell's name had been exchanged as a possible witness at the outset of trial. This is certainly not a proper basis for exclusion of testimony which would otherwise be admissible in rebuttal however. That a party list all witnesses, including rebuttal witnesses, in advance of trial is of course to be encouraged, but this act, standing alone, should not compel a plaintiff to employ all listed witnesses in his case-in-chief if he elects not to do so. It may well also be that the judge's decision to exclude Ancell's testimony was based on his anticipation of some of the questions expected to be put to the vocational expert which might be subject to valid objection. This similarly is not a proper basis for excluding the testimony of a witness altogether, since it is enough to rule on the particular testimony at the time any and each objection is raised.
 
 
 33
 Fed.R.Civ.P. 61 of course provides that no error in the admission or exclusion of evidence is grounds for granting a new trial or setting aside a verdict or otherwise asserting a judgment "unless refusal to take such action appears to the court inconsistent with substantial justice." The court at every stage of the proceeding must thus disregard any error or defect in the proceeding which does not "affect the substantial rights of the parties." This same standard is imposed on appellate courts through 28 U.S.C. Sec. 2111: "On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."
 
 
 34
 Despite our relatively narrow scope of review and despite the fact that a more diligent or perhaps braver counsel might have succeeded in making a better offer of proof concerning the testimony of the witness Ancell, we are nevertheless unable to conclude that the error in rebuttal evidence was harmless. The right under the statute and under the federal law of this circuit to offer proofs in rebuttal where defendant has placed in evidence proof of mitigation is a substantial right in all circumstances, and it appears particularly critical to the parties in this trial. It is evident from our careful examination of the transcript, which includes not only the testimony but the arguments of counsel before the jury, that the question of Mr. Corbin's ability to obtain alternate employment after his injury was very much on the minds of counsel and consequently was also on the minds of the jury. In his closing argument counsel for Norfolk & Western argued:
 
 
 35
 Judge Cohn will instruct you that if Mr. Corbin has been injured even partly as a result of other negligence, even if the evidence is partly our fault, he still has the legal duty to minimize his damages. Again, the law uses a big word mitigate, instead of minimize, but it means the same thing. That is his duty. He must minimize his damages which means, as Judge Cohn will tell you, if he can find a job, he must do so and that's what I am suggesting he should do, go out there and earn an income. The doctors say he can, Mary Ellen Kreski says that there are plenty of jobs out there that fit his skills and his physical limitations, plenty of them. In fact, the last exhibit which you have not had a chance to see yet lists just in the Detroit area alone, sedentary occupations currently in existence, which Mr. Corbin can do within his physical limitations and his abilities. Lists, I haven't even counted them, Ladies and Gentlemen, how many different jobs in those categories are listed in the survey by the bottom number total sedentary jobs of this occupation in the Detroit area alone is 71,000. All I am suggesting is that Mr. Corbin can get one of them and reduce his damages.
 
 
 36
 .... Now, what is the effect of the evidence which the other side didn't come up with, the evidence Mary Ellen Kreski has jobs available.
 
 
 37
 Counsel for Corbin sought to counter this offensive as best he could, but had to do so without assistance of the testimony of his excluded vocational expert:
 
 
 38
 Six jobs out of 27,000 or something. Ms. Kreski talked about six jobs. That's not too many and then for those six that you have, 260 openings a year for a counter clerk, 680 for general clerk, 250 for general assembly line work. I don't think he worked on the assembly line. I think the evidence shows that and for those other ones we all know from our general experience, which you can apply in this case, the thousands of applicants for those jobs and the high unlikelihood that Floyd Corbin's going to get any of them. Especially, even Dr. Palella said he has to exercise several times a day.
 
 
 39
 Corbin also argues that the trial court committed various other errors during the course of the trial which are similarly grounds for reversal. He claims first that the court erred in refusing to allow Norfolk & Western's vocational expert to be cross-examined on materials reviewed during her testimony. He claims further that the court erred in allowing the testimony of Norfolk & Western's annuity expert when the expert had no knowledge of the assumptions underlying the annuity figures, and when the annuity evidence conflicted with jury instructions on the tax consequences of a damage award. He also claims that the court erred in refusing to give Corbin's requested instruction regarding the effects of inflation on the award. And finally Corbin claims that the court erred in admitting a job listing exhibit which was cumulative, had no probative value, and presented a high likelihood of misleading the jury.
 
 
 40
 After careful consideration of each of the additional claims, we find that only the failure of the district judge to allow Corbin to present a rebuttal witness on the issue of mitigation is serious enough to warrant reversal. Without expounding further on the propriety of the district judge's ruling on the other claims, suffice it to say that considerable discretion is vested in the trial judge in his governance of the trial proceedings, and we are unable to say that in the context of the trial proceedings here there was an abuse of discretion. The court's ruling refusing to allow Corbin's rebuttal witness to testify, however, was in our opinion error which we cannot disregard as harmless.
 
 
 41
 Accordingly, the judgment of the district court is VACATED and the case is REMANDED to the district court for retrial on the issue of damages only, Norfolk & Western not having cross-appealed the jury's finding of negligence on its part.