878 F.2d 382
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ali MUSLEH, Plaintiff-Appellant (88-1241),
Plaintiff-Appellee (88-1242),
v.
AMERICAN STEAMSHIP COMPANY, Defendant-Appellee (88-1241),
Defendant-Appellant (88-1242).
 Nos. 88-1241, 88-1242.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1989.
 
 Before BOYCE F. MARTIN and BOGGS, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Ali Musleh ("plaintiff") appeals the district court's jury instruction on comparative negligence in this Jones Act, 46 U.S.C. Sec. 688, claim. American Steamship Company ("defendant") cross-appeals the verdict and requests a new trial. The jury returned a verdict of two hundred thousand dollars ($200,000) for the plaintiff reduced 50% for his own comparative negligence. Finding no error in the instructions or other proceedings, we affirm the judgment in favor of the plaintiff for one hundred thousand dollars ($100,000).
 
 
 2
 * Plaintiff began working as the second cook aboard the M/V ADAM E. CORNELIUS, a vessel owned and operated by the defendant, on October 17, 1985. Part of the plaintiff's responsibilities included the "fit out," which is the taking on of stores for the journey. This is usually accomplished by bringing goods onto the vessel with a basket, and then storing the goods in the appropriate place on the vessel. Food items are taken to just outside the galley by members of the deck department. It is then the responsibility of the galley personnel, including plaintiff, to place the food items in their proper place.
 
 
 3
 On October 21, 1985, gallons of milk in plastic milk crates were brought on board the vessel. These crates were stacked outside the galley door. In an attempt to clear the walkway, Peter McCabe, a deckhand on the vessel, began moving the items. Brendan Murphy, a porter assigned to the galley, asked McCabe to slide the milk crates to him. At this time, Murphy was working with the plaintiff by helping him store the milk in the refrigerator. Two crates were slid across the floor without incident. Plaintiff claims that he did not see either of these crates. Plaintiff also testified that it was routine procedure to carry the crates, not to slide them across the floor.
 
 
 4
 When Murphy slid the third crate, it struck plaintiff in the leg. Murphy acknowledged that he had not signaled the plaintiff in any way that the crates would be slid across the floor. Following the incident, plaintiff sought medical care at St. Vincent's Hospital. At the hospital, plaintiff was diagnosed with a small hematoma and was told to use an Ace bandage and ice the area for forty-eight hours and soak or heat the area four times a day thereafter. He was returned to the vessel fit for duty and continued working until October 25, 1985, when the vessel arrived in Chicago, Illinois, and plaintiff was relieved of his duties by someone with more seniority. Since leaving the vessel on October 25, 1985, plaintiff has sought medical care from several physicians in relation to his injury.
 
 
 5
 Plaintiff commenced this action on March 12, 1986, alleging negligence on the part of American Steamship Company. American Steamship's answer pleaded the affirmative defense of comparative negligence. During the trial, evidence was given concerning the location of all involved parties during the incident, the plaintiff's knowledge of the events surrounding the incident, and plaintiff's previous earnings history. In 1985, plaintiff's gross earnings were $33,381. $10,892.96 of this amount was made with the defendant. From 1981 until 1984, plaintiff's annual salary with the defendant ranged between $6,827.56 and $24,087. The lower earnings generally correspond to the years in which plaintiff went to Yemen for extended periods of time.
 
 
 6
 At the close of the proofs, plaintiff requested that the district court not give any instruction regarding contributory or comparative negligence, claiming that there was no evidence to support this instruction. The district court denied this motion and instructed the jury on comparative negligence. A verdict was returned for the plaintiff on October 5, 1987, in the amount of $200,000 with a fifty per cent comparative negligence assessment. Defendant filed a Motion for Judgment NOV, a New Trial or Remittitur, which was denied on February 2, 1988. This appeal followed.
 
 II
 
 7
 Each party has one main issue on appeal. Plaintiff objects to the jury instruction regarding comparative negligence while the defendant primarily contends that the verdict was clearly excessive and should be set aside.[1]
 
 
 8
 * Plaintiff contends that the district court should not have given a jury instruction regarding comparative negligence or conversely should have set aside the jury's reduction based on a finding of comparative negligence because he claims that the evidence is insufficient to support a comparative negligence theory as opposed to an assumption of the risk theory.
 
 
 9
 A defendant is entitled to a contributory negligence (or comparative negligence) instruction if there is any evidence to support the theory; however, giving one where not warranted is reversible error. Birchem v. Burlington Northern R. Co., 812 F.2d 1047, 1049 (8th Cir.1987). Thus, in Jones Act (46 U.S.C., Sec. 688) cases, a "contributory negligence" instruction is not to be given if the facts really suggest an "assumption of the risk." Hall v. American S.S. Co., 688 F.2d 1062, 1065 (6th Cir.1982).
 
 
 10
 For the purposes of this rule, "assumption of the risk" means proceeding in an unsafe area of the ship when there is no other alternative open to the seaman. Id. at 1065-66 (quoting Tolar v. Kinsman Marine Transit Co., 618 F.2d 1193, 1195 (6th Cir.1980)). Furthermore, a seaman is not contributorily negligent simply because he fails to report a dangerous condition, if doing so would otherwise cause the seaman difficulty or be unavailing. Rivera v. Farrell Lines, Inc., 474 F.2d 255, 258 (2nd Cir.1973).
 
 
 11
 In Burden v. Evansville Materials, Inc., 840 F.2d 343 (6th Cir.1988), this court held that a man who had injured his back while lifting heavy cables on a ship could be contributorily negligent because he had realistic safe alternatives available and he chose the alternative which led to his injury. This court noted that the seaman was in a dangerous position but found that one of the alternatives (carrying the cables with a partner) was safer than the alternative chosen by the seaman of lifting the cables by himself. This court paid particular attention to the fact that the seaman could have requested help without any negative reaction from the management of the ship. This is in direct contrast to the kitchen worker in Rivera who could not request help to alleviate his dangerous condition, a slippery floor, because previous requests by others had been met with rebukes. See Rivera, 474 F.2d at 258.
 
 
 12
 In the present case, the district court did not err in instructing the jury regarding comparative negligence. Although plaintiff insists that the loading of milk cartons was a dangerous condition and thus an "assumption of the risk" under Hall, plaintiff has introduced no evidence that he could not have warned his superiors or requested that the parties cease sliding milk cartons across the floor. Thus the case is similar to Burden in which this court decided that the situation could constitute cognizable "contributory negligence" because of the presence of safe alternatives.
 
 
 13
 Plaintiff counters that he was not even aware that the milk cartons were being slid across the floor, and therefore could not have requested that the parties take other actions. It is clear from the verdict that the jury did not accept this version of the facts. Although in analogous situations under the FELA (the statute upon which the Jones Act is based), a defendant cannot prove contributory negligence by only attacking the credibility of the plaintiff's testimony, Birchem, 812 F.2d at 1049-1050 n. 4, this has not occurred in the present case. McCabe's testimony concerning the location and actions of the parties at the time of the accident could certainly be interpreted by a reasonable person as indicating that the plaintiff was aware of what was going on and did not take reasonable or proper precautions for his own safety. Thus, the jury instruction regarding comparative negligence was warranted.
 
 B
 
 14
 The defendant contends that this court should order a new trial arguing that the verdict was excessive. Specifically, defendant alleges that the verdict was so out of proportion to the injury as to "shock the conscience."
 
 
 15
 A court can overturn a jury verdict if it is so outrageous as to shock the conscience and there is no reasonable basis for its size. Rodgers v. Fisher Body Div., G.M.C., 739 F.2d 1102, 1106 (6th Cir.1984) (citations omitted). In the present case, the defendant has not met this high burden. Although defendant continues to characterize plaintiff's injury as a non-disabling "bump on the leg," the jury, presented with conflicting medical testimony, thought otherwise. Furthermore, if one accepts the version of the facts which support the theory that the plaintiff was disabled from the accident, then the figure arrived at by the jury is not excessively large when plaintiff's earnings record is combined with the number of years he had left to work. The fact that this value was not mitigated by his possible earnings in other areas is not the responsibility of the plaintiff. The burden is on the defendant to show that the plaintiff could have mitigated damages by taking lesser employment. Jones v. Consolidated Rail Corporation, 800 F.2d 590, 593 (6th Cir.1986).
 
 
 16
 This is a classic case of factual disputes which should have been, and were, submitted to a jury. The jury returned its verdict, and neither party has advanced a legal contention sufficient to overturn this verdict. Therefore, the judgment is AFFIRMED.
 
 
 
 [1]
 In its brief, American Steamship Company also contends that the district court improperly allowed evidence of subsequent remedial action, that plaintiff's attorney presented improper closing argument, that the jury instruction regarding plaintiff's "slight duty of care" was erroneous, and that the verdict was inconsistent. We find the objections either not well taken or not so harmful as to require a new trial