28 F.3d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard PORTIS, Plaintiff-Appellee,
v.
GRAND TRUNK WESTERN RAILROAD COMPANY, a Michigan
corporation, Defendant-Appellant.
 No. 93-1721.
 United States Court of Appeals, Sixth Circuit.
 July 12, 1994.
 
 Before MILBURN and BATCHELDER, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant appeals a jury verdict for plaintiff Richard Portis in the amount of $500,000. The issues are (1) whether the jury verdict was excessive, (2) whether the district court erred by failing to instruct the jury on plaintiff's duty to mitigate damages, and (3) whether the district court erred by refusing to allow a doctor to testify about reports and opinions of other doctors. For the reasons that follow, we affirm.
 
 I.
 
 2
 On March 25, 1991, while working at Grand Trunk Western Railroad Company's Port Huron Car Shop, plaintiff Richard Portis, a railroad carman, was injured when he had to suddenly twist and duck out of the way of an oncoming, airborne wrench. The wrench had been knocked loose from a piece of equipment by a co-worker's hammering at the wrench. Plaintiff sustained a back and neck injury from his efforts in dodging the flying wrench.
 
 
 3
 Plaintiff Portis brought this action under the Federal Employers' Liability Act, 45 U.S.C. Sec. 51 et seq.,[1] alleging that the injuries he received were proximately caused by defendant Grand Trunk's negligence. The jury found defendant negligent and awarded plaintiff $500,000 in damages. On appeal, defendant contests the damage award only; it does not contest the jury's finding of negligence. Defendant filed a motion for a new trial or remittitur arguing the same issues it raises on appeal. In its memorandum opinion and order, the district court addressed each of defendant's arguments and denied the motion. This timely appeal followed.
 
 
 4
 The parties presented extensive medical evidence at trial. Plaintiff was examined by several doctors, including Dr. Yull, one of defendant's company doctors; Dr. Gallant, defendant's Chief Medical Advisor; and Dr. Sutton, an orthopedic surgeon in Port Huron who was plaintiff's primary treating physician. Additionally, plaintiff was examined by a second orthopedic surgeon, Dr. Roy, apparently at defendant's request. Even though Dr. Sutton was plaintiff's primary treating physician, plaintiff was periodically examined by Drs. Gallant and Yull. Dr. Roy examined plaintiff one time and prepared a report that was sent to Dr. Gallant. Neither Dr. Yull nor Dr. Roy testified at the trial.
 
 
 5
 At the trial, the parties disputed plaintiff's ability to return to work. Defendant's medical expert, Dr. Gallant, testified that both he and Dr. Yull released plaintiff to return to work without restrictions. Although Dr. Roy's report was not admitted into evidence, Dr. Gallant testified that Dr. Roy's conclusions regarding plaintiff's condition substantiated Dr. Gallant and Dr. Yull's evaluations. Plaintiff's medical expert, Dr. Sutton, testified that plaintiff could return to work provided that plaintiff did not lift more than ten to fifteen pounds, and Dr. Sutton indicated that the ten to fifteen pound restriction was permanent.
 
 
 6
 After being cleared by all four doctors, plaintiff Portis reported to work and presented Dr. Sutton's orders to defendant. Plaintiff was subsequently sent home because no light duty work existed at Grand Trunk. Plaintiff did not seek alternative employment while restricted to light duty work. However, he was still considered a Grand Trunk employee and continued to be examined periodically by Dr. Gallant. At the time of the trial, plaintiff had been injured for less than nineteen months and was still an employee of Grand Trunk. Both plaintiff and Dr. Sutton testified that plaintiff was experiencing constant pain and frequent muscle spasm. Dr. Sutton indicated that plaintiff would permanently experience pain and muscle spasm.
 
 
 7
 In his closing argument, plaintiff's counsel suggested a total damage award of $800,000. Plaintiff had testified that he was making approximately $30,000 annually at the time of the accident. Because he had been off work for approximately nineteen months at the time of the trial, his lost wages were approximately $45,000-$50,000. Plaintiff also testified that he was 40 years old and had planned to work until he reached the age of 62. He indicated, however, that because of his injuries, any job that he would be able to perform would require him to accept a decrease in pay. Specifically, plaintiff's attorney indicated that, including fringe benefits, plaintiff would lose approximately $20,000 per year. Multiplying $20,000 by 22 years (plaintiff's estimated work life), plaintiff's attorney suggested that reasonable compensation for lost wages would be $440,000 plus the $50,000 plaintiff had already lost. Thus, plaintiff's counsel argued that plaintiff's economic damages were $490,000. In addition to these economic damages, plaintiff requested damages for pain and suffering and calculated the total damage award at $800,000. Defendant chose to defend on the ground that plaintiff's claim was fraudulent and, thus, presented no evidence regarding plaintiff's lost wages or failure to mitigate damages. Defendant's closing argument made no mention of damages, nor did it give any alternative figure for the jury to consider. The jury did not indicate how much of the $500,000 verdict it awarded was for economic loss and how much was for pain and suffering.
 
 II.
 A.
 
 8
 Defendant contends that it should be granted a new trial because the jury's damage award of $500,000 was excessive. In support of this contention, defendant argues (1) the $500,000 award was so large "as to shock the judicial conscience," (2) the jury disregarded the court's instructions on damage awards, (3) the award was based on "speculation and conjecture," and (4) plaintiff counsel's comments during closing argument were "improper and prejudicial" and "designed to influence the jury" to base their verdict on "passion, prejudice and sympathy." The district court rejected all of these arguments and held that the jury's award of damages was not excessive. "[A]bsent abuse of discretion or clear mistake, the judgment of the judge who presided at the trial that a verdict was not excessive will control." Hoskins v. Blalock, 384 F.2d 169, 170 (6th Cir.1967). A damage award should not be set aside as excessive unless it was based on prejudice, passion, or sympathy, or was so large as to be shocking to the conscience of the court. E.g., Farber v. Massillon Bd. of Educ., 917 F.2d 1391, 1395 (6th Cir.1990), cert. denied, 111 S.Ct. 952 and 2851 (1991).
 
 
 9
 The damage award of $500,000 was within the range permitted by the evidence presented at trial, and therefore was not so large as to shock the conscience of the court. As a general rule, "a jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." Id. (quotations and citation omitted). In this case, plaintiff testified about his salary and fringe benefits, the length of time he had planned to continue working, and the reduction in salary he could expect from accepting employment with the medical restrictions caused by the accident. In his closing argument, plaintiff's counsel showed the jury how these numbers should be calculated and arrived at a sum of $490,000 for economic damages. Plaintiff also testified that he had constant pain in his back and neck and experienced frequent muscle spasm. Dr. Sutton indicated that this was a permanent condition. For this pain and suffering, plaintiff asked the jury for approximately $310,000. We do not know how the jury arrived at its final $500,000 figure, but we do know that $500,000 was not beyond the maximum damages that the jury reasonably could find to be compensatory for plaintiff's loss. See Kokesh v. American S.S. Co., 747 F.2d 1092, 1095 (6th Cir.1984) (upholding $500,000 award where plaintiff had back injury permanently impairing earning capacity and causing pain).
 
 
 10
 Defendant's reliance on Nairn v. National Railroad Passenger Corp., 837 F.2d 565 (2d Cir.1988), is misplaced. In Nairn, the court held that a $765,000 verdict awarded to an injured railroad employee was excessive. The injuries suffered by the Nairn employee were similar to those suffered by plaintiff in this case. However, the reason the court found the verdict excessive was that at least $400,000 of the award was for pain and suffering. In the present case, the award for pain and suffering could have been as low as $10,000. Therefore, Nairn is no support for defendant's position.
 
 
 11
 Defendant also argues that the jury disregarded the court's instructions on the non taxability of the damage award and reduction of award for loss of future earnings to present value. However, a jury is presumed to have followed the instructions given by the court. Clarksville-Montgomery County Sch. Sys. v. United States Gypsum Co., 925 F.2d 993, 1003 (6th Cir.1991). The only argument defendant advances to overcome this presumption is: "It is abundantly clear based on the extremely short duration of time that the jury deliberated (one hour and forty minutes) that it did not take into account either the non taxability of the damage award or the reduction to present worth as required by law." Brief for Defendant at 18 (emphasis omitted). We see nothing "abundantly clear" about it. A reasonable jury could make the needed calculations in one hour and forty minutes, particularly where it has no evidence of economic loss to consider except that presented by the plaintiff. Therefore, defendant has not overcome the presumption that the jury followed the court's instructions.
 
 
 12
 Defendant contends that any award for future loss of income in this case could only be based on speculation because "there was no basis for the jury to have concluded that plaintiff's condition would be disabling in the future and/or to what extent." Brief for Defendant at 19. However, Dr. Sutton testified that plaintiff could not perform work requiring him to lift more than 10-15 pounds and that this weight restriction was permanent. This testimony provided the jury a basis from which the jury could conclude that plaintiff would remain partially disabled in the future. Therefore, defendant has not shown that the jury's conclusion was based on speculation.
 
 
 13
 Defendant also complains that three comments made by plaintiff's counsel during closing argument, taken as a whole, constitute reversible error because they were "improper and prejudicial comments designed to influence the jury so that their verdict would be based in whole or in substantial part on passion, prejudice and sympathy." Brief for Defendant at 20 (emphasis omitted). A new trial may be granted if "improper closing argument irreparably prejudices a jury verdict." Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 848 F.2d 613, 619 (5th Cir.1988); see also Rommel-McFerran Co. v. Local Union No. 369, Int'l Bhd. of Elec. Workers, 361 F.2d 658, 661-62 (6th Cir.1966). However, defendant did not object to these comments at any time before the jury retired to deliberate. After the jury returned the unfavorable verdict, defendant for the first time called the alleged improprieties to the court's attention. At that point it was too late for the court to cure any possible problems caused by plaintiff counsel's comments. "[I]n a civil action, '[a] principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result.' " United States v. Walton, 909 F.2d 915, 924 (6th Cir.1990) (quoting 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 2805, at 39 (1973)); see also Carmel v. Clapp & Eisenberg, P.C., 960 F.2d 698, 704 (7th Cir.1992); Nissho-Iwai Co., 848 F.2d at 619; Computer Sys. Eng'g, Inc. v. Qantel Corp., 740 F.2d 59, 69 (1st Cir.1984). Defendant has not shown that any gross injustice resulted from plaintiff counsel's statements in closing argument. Therefore, a new trial could not be granted on these grounds even if plaintiff counsel's statements were improper.
 
 
 14
 Defense counsel explains that she did not object at trial "because she believed that plaintiff's counsels, being experienced trial attorneys, knew or should have known that 'extraneous matters' that had not been introduced and admitted into evidence should not have been put before a jury." Reply Brief for Defendant at 7. What plaintiff's counsel knew or should have known is irrelevant. The fact is that defendant did not bring the alleged improprieties to the court's attention at a time when the court could take corrective measures. If we excused defendant's failure to object because the opposing attorneys should have known what they were doing was improper, then all errors made at trial would be subject to review even if not objected to, because all attorneys should be competent and know the rules of trial procedure. Allowing defendant's proffered reason to excuse the failure to object would encourage some lawyers to plant error for appeal. This we refuse to do.
 
 
 15
 Relying on United States v. Bess, 593 F.2d 749, 757 n. 11 (6th Cir.1979), defendant argues that it did not have to object to plaintiff counsel's comments on extraneous matters. Bess is inapposite. Bess merely held that there is one circumstance where statements of personal belief in closing argument are proper. Where criminal defense counsel has impugned the integrity or motivation of the prosecutor, the prosecutor has the right to reply. That curative admissibility rule simply has nothing to do with this case.
 
 
 16
 In sum, defendant has not satisfied its burden of showing that the jury's verdict was excessive or influenced by passion, prejudice, or sympathy. Therefore, a new trial cannot be granted on this basis.
 
 B.
 
 17
 Under the Federal Employers' Liability Act a plaintiff has a duty to mitigate his damages. Jones v. Consolidated Rail Corp., 800 F.2d 590, 593 (6th Cir.1986); Baker v. Baltimore & Ohio R.R. Co., 502 F.2d 638, 644 (6th Cir.1974). The district court did not instruct the jury on plaintiff's duty to mitigate. On appeal, defendant contends that this omission was reversible error, but at the trial defendant did not object to the omission. Rather, defendant raised its objection for the first time in its motion for a new trial.[2] Federal Rule of Civil Procedure 51 provides: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict...." Because defendant did not object before the jury retired, we may only review the district court's failure to instruct the jury on mitigation principles for plain error, error that is so obvious and prejudicial that a failure to correct it would result in a manifest miscarriage of justice. See Thompson v. Paasche, 950 F.2d 306, 314 (6th Cir.1991); Gomez v. Great Lakes Steel Div. Nat'l Steel Corp., 803 F.2d 250, 256 (6th Cir.1986); O'Brien v. Willys Motors, Inc., 385 F.2d 163, 166 (6th Cir.1967). Defendant offers no argument as to why the omission of the mitigation instruction was plain error other than to say that it is the law that a plaintiff must mitigate his damages and failing to give the instruction "may have affected the award of damages." Brief for Defendant-Appellant at 45 (emphasis in original).
 
 
 18
 In denying defendant's motion for a new trial, the district court held that the omission of the mitigation instruction was not prejudicial to defendant because the jury verdict appeared to have taken the mitigation principle into account. Without accounting for the duty to mitigate, plaintiff's economic damages would have been $660,000, that is, plaintiff's $30,000 salary multiplied by his expected work life of 22 years. The district court concluded that the jury had to have taken mitigation principles into account because it only awarded $500,000, which was the total of economic damages and pain and suffering. We agree that defendant has not satisfied its burden of showing that the failure to instruct the jury on mitigation principles resulted in a manifest miscarriage of justice. Therefore, the failure to give such an instruction was not plain error.
 
 C.
 
 19
 Defendant's final complaint is that the district court committed reversible error by prohibiting Dr. Gallant from testifying about the medical opinions of Dr. Yull and Dr. Roy, which were contained in the medical file maintained by Dr. Gallant.[3] Plaintiff objected to the introduction of these opinions because the opinions constituted hearsay. Defendant argued that the opinions fell within the hearsay exceptions for statements made for purposes of medical diagnosis or treatment, Fed.R.Evid. 803(4), and for records of regularly conducted activity, Fed.R.Evid. 803(6). We review the district court's rulings on admission of evidence only for an abuse of discretion. Nida v. Plant Protection Assoc. Nat'l, 7 F.3d 522, 527 (6th Cir.1993). "In the context of an evidentiary ruling, abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made regarding admission of evidence. However, even if a mistake has been made, a new trial will not be granted unless the evidence would have caused a different outcome at trial." Polk v. Yellow Freight Sys., Inc., 876 F.2d 527, 532 (6th Cir.1989) (citation omitted).
 
 
 20
 The medical opinions of Dr. Yull and Dr. Roy that plaintiff was fit to return to regular work do not fall within the hearsay exception provided by Fed.R.Evid. 803(4). "The rationale underlying the Rule 803(4) exception for statements made for purposes of treatment is that the declarant's motive guarantees their trustworthiness, since he has a motive to disclose the truth because his treatment will depend in part upon what he says." 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence p 803(4), at 803-144 (1993) (citing Meaney v. United States, 112 F.2d 538 (2d Cir.1940)). In this case, defendant was not trying to admit statements made by plaintiff for the purposes of treatment or diagnosis but rather was trying to admit the medical opinions and diagnoses of doctors who had examined plaintiff. Because these opinions were not statements made for the purposes of diagnosis or treatment, they do not fall within the hearsay exception of Rule 803(4).
 
 
 21
 Furthermore, the medical reports were not admissible under Fed.R.Evid. 803(6) because Dr. Gallant was unable to lay a proper foundation. A "qualified witness" under Rule 803(6) need not have participated in the making of the record, but he must be "familiar with the record keeping system." United States v. Hathaway, 798 F.2d 902, 906 (6th Cir.1986). Here, Dr. Gallant could not testify as to the record keeping procedures of Drs. Yull and Roy or if it was the regular practice of those doctors to make such records. Because Dr. Gallant was not familiar with the record keeping system under which these reports were made, he was not qualified to a lay a foundation for the reports to be admitted or read into evidence. Furthermore, the fact that Dr. Gallant regularly kept reports of other doctors in his records does not cure this foundation deficiency. Rule 803(6) requires not only that the witness show that the report was "kept in the course of a regularly conducted business activity" but also that "it was the regular practice of that business activity to make the ... report." Dr. Gallant and defendant Grand Trunk may have regularly kept such reports, but it was not their regular practice to make such reports. In other words, Dr. Gallant's custody of Dr. Yull's and Dr. Roy's medical reports does not make the reports admissible as Dr. Gallant's business records. See Belber v. Lipson, 905 F.2d 549, 552 (1st Cir.1990).
 
 
 22
 Moreover, although Dr. Gallant was not permitted to read the opinion of Dr. Roy into evidence, he nevertheless advised the jury of the conclusions reached by Dr. Roy by testifying that Dr. Roy's opinion "reinforces my opinion that this man is not disabled." J.A. 601. Therefore, even if it were error to disallow the medical report, defendant was not substantially prejudiced by the error because the jury was aware of the basic content of the report and that the other doctor's findings bolstered Dr. Gallant's conclusion.
 
 
 23
 The district court did not abuse its discretion in refusing to allow the medical reports of Dr. Roy and Dr. Yull to be admitted into evidence. We are not firmly convinced that the district court made a mistake in not allowing the evidence. Rule 803(4) is inapplicable, and defendant did not lay a proper foundation to admit the reports under Rule 803(6). Additionally, even if the reports should have been admitted, we cannot say that it would have made a difference in the outcome of the trial, because the jury was aware that the reports agreed with Dr. Gallant's conclusion.
 
 III.
 
 24
 For the reasons stated, the district court is AFFIRMED in all respects.
 
 
 
 [1]
 45 U.S.C. Sec. 51 provides in relevant part:
 Every common carrier by railroad while engaging in [interstate] commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier....
 
 
 [2]
 The district court required the parties to submit joint proposed jury instructions. No proposed instruction on the duty to mitigate was included in the joint instructions submitted by the parties. After the trial was complete and the verdict rendered, defendant filed a motion to amend the record to add defendant's individual set of proposed instructions. A mitigation instruction was included in defendant's proposed instructions
 Defendant seems to argue that the failure to object should be excused because the district court gave the attorneys only an hour to review the jury instructions before closing arguments. Even if an hour was insufficient time, which we do not mean to imply, this excuse would not aid defendant here because not only were the attorneys given an hour to review the actual jury instructions, but the attorneys also had the joint proposed jury instructions well beforehand. There was no mitigation instruction in the joint proposal, and therefore defendant should have been aware of the possibility that such an instruction would not be given.
 
 
 [3]
 Dr. Yull and Dr. Roy were not called as witnesses at trial. Defendant contends that they were not called because there was an agreement between counsel that the reports could be admitted into evidence. However, no such agreement appears in the record of this case, and plaintiff's counsel states that no such agreement was ever made