**Helen HOLT, Plaintiff,**

v.

**OLMSTED TOWNSHIP BOARD OF TRUSTEES, et al., Defendants.**

**No. 1:96CV2162.**

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 18, 1998.

Amy Glesius, Elfvin & Besser, Edward G. Kramer, Kramer & Nierman, Cleveland, OH, for plaintiff.

Robert E. Matyjasik, Office Of The Prosecuting Attorney, Cleveland, OH, John Thomas McLandrich, Todd M. Raskin, Deborah W. Yue, Mazanec, Raskin & Ryder, Solon, OH, for defendants.

## ORDER

OLIVER, District Judge.

On October 4, 1996, Plaintiff, Helen Holt ("Holt"), brought this action against Defendants: the Olmsted Township Board of Trustees; Carolyn Griffor, in her official capacity as Trustee; Michael Stallard, in his official capacity as Trustee; Karen Straka, in her official capacity as Trustee; Joseph M. Coury, in his individual capacity; Theodore Makrinos ("Makrinos"), in his individual and former official capacity as Police Chief; and Dennis McCafferty ("McCafferty"), in his official capacity as Police Chief (collectively referred to as "Defendants"). Plaintiff alleges that Defendants discriminated against her because of her disability in violation of the Americans with Disabilities Act, 42 U.S.C § 12101 et seq. ("ADA"), and § 4112.02, et seq., of the Ohio Revised Code ("ORC"), the Ohio statute that governs disability discrimination claims; retaliated against her in violation of the same statutes; and discriminated against her in the conditions of her employment in violation of ORC § 4112.02.

On July 10, 1997, Holt amended her complaint, alleging that Defendants retaliated against her for filing this action in violation of the ADA and ORC § 4112.02. On November 24, 1997, the court issued an order (Docket No. 30) that dismissed Defendants Makrinos and Coury in their individual capacities, substituted McCafferty as a party in place of Makrinos and struck the names of the Trustees and McCafferty from Plaintiff's complaint.[1]

---

1. Makrinos and Coury were dismissed because the court found that individual liability does not attach in ADA and ORC § 4112 discrimination cases. Because Makrinos could not be party to litigation in his former capacity as Chief of Police, McCafferty was

On February 2, 1998, Defendant moved the court for summary judgment on Holt's ADA and ORC Ch.4112 claims. On March 20, 1998, Holt filed her Memorandum in Opposition to Defendant's Motion for Summary Judgment. On April 13, 1998, Defendant moved the court to strike Holt's affidavit which was attached to her Memorandum in Opposition to Defendant's Motion for Summary Judgment.

For the reasons that follow, Defendant's Motion to Strike (Docket No. 48) is granted in part and denied in part. Defendant's Motion for Summary Judgment (Docket No. 39) is granted in part and denied in part.

## I. FACTS

Holt is employed by Olmsted Township as a civilian dispatcher in the Olmsted Township Police Department ("Department"). She was hired in 1977 as a part-time dispatcher. In 1990, Holt became a full-time dispatcher for the Department. While Holt has worked a variety of shifts during her employment with the Department, the dispatchers are currently on a rotating schedule. The dispatchers are required to rotate between day, evening and night shifts. The Department currently employs four dispatchers.

Plaintiff's health difficulties began approximately in January of 1992. Specifically, Holt suffered from fatigue, tiredness and sleeplessness. She sought treatment from Dr. Oscar Velez ("Velez"). In January of 1992, Dr. Velez sent Holt to see Dr. L.C. Rao ("Rao"), an internal medicine specialist with a subspecialty in pulmonary disease. Dr. Rao diagnosed Holt with cytomegalovirus serology ("CMV"). Holt was also diagnosed with intrinsic asthma, a condition whereby the doctor cannot detect the irritant which causes asthma attacks. Dr. Rao recommended that Holt work a consistent schedule to prevent her CMV from worsening.

In January of 1995, Holt was again examined by Dr. Rao. That examination revealed symptoms of chronic fatigue syndrome.[2] Dr. Rao sent a letter to the Department recommending that Holt follow a consistent work schedule, preferably on the day shift. The Department did not respond to Dr. Rao's letter.

On June 9, 1995, Holt was examined by Dr. Isam Diab ("Diab"). Dr. Diab found that Holt's symptoms of sleep disturbance, resulting in an inability to concentrate, fatigue, respiratory difficulty, pain in her back, legs, shoulders, and neck were consistent with Fibromyalgia.[3] Dr. Diab found that Holt's variable work schedule caused disruptive sleep patterns, which in turn, aggravated her Fibromyalgia. Dr. Diab suggested that working a day shift schedule would benefit Holt's condition.

On June 16, 1995, Dr. Velez, in a letter to Defendant, recommended a smoke-free environment for Holt to alleviate the respiratory difficulties brought on by her Fibromyalgia. Holt did not receive a response to Velez's letter.

After Holt filed a complaint with the Equal Employment Opportunity Commission ("EEOC") concerning her respiratory difficulty, Defendant instituted a smoking ban. The new policy allowed employees to smoke at a back door with the door open. Also, a portable air filter was placed in a room adjacent to the dispatcher's room.

---

substituted as a party in place of Makrinos. The order struck the names of the Trustees and McCafferty in their official capacity because the court found that official capacity suits are essentially suits against the relevant entity, in this instance the Olmsted Township Board of Trustees. The Olmsted Township Board of Trustees was already named as a defendant in Plaintiff's complaint.

**2.** Chronic fatigue syndrome is associated with megalovirus infection.

**3.** Fibromyalgia is characterized by widespread pain, tenderness of pressure points on the body and fatigue often attributable to the abnormal sleep patterns caused by the disorder.

On July 24, 1995, Holt visited Dr Diab. He noted that Holt was doing better in general. However, he also noted that she still had some tenderness due to the Fibromyalgia and she was not taking her medications on a regular basis. On July 25, 1995, Holt requested that she be given a permanent shift.

On August, 17, 1995, Holt visited Dr. Diab once more. At that time, Dr. Diab noted that Holt was doing well until her shift at work started to alternate between days and nights. He noted that Holt suffered more aches, pains and generalized fatigue because of her alternating work schedule. On August 21, 1995, Holt forwarded Dr. Diab's August 17 report to, then Police Chief, Makrinos. However, Makrinos was on vacation until August 28, 1995. In his absence, Lieutenant John W. Minek ("Minek") responded to Holt's letter by asserting that he did not have the authority to grant her request.

On March 1, 1996, Holt sent another shift change request to McCafferty. A letter from Dr. Diab which recommended the shift change accompanied Holt's request. McCafferty did not respond to Holt's request letter.

On April 19, 1996, Holt was examined by Dr. William S. Wilke ("Wilke"), a physician chosen by Defendant's attorney. Holt informed Dr. Wilke that she suffered from fatigue, sleep disruption, respiratory difficulty, and pain in the back, neck and legs due to Fibromyalgia. Dr. Wilke noted that Holt suffered from a history of chronic bronchitis, overweight condition, Fibromyalgia, mild trochanteric bursitis and fatigue due to Fibromyalgia. Dr. Wilke suggested that Holt would benefit from a permanent daytime shift. He also noted that a weight loss and exercise program would be beneficial. At that time, Holt's medications consisted of Calan–SR 180 mg., one per day, Prilosec 20 mg. before bed, Relafin 750 mg., twice daily and Cyclobenzaprine 10mg., one or two before sleep.

On April 22, 1996, Holt was informed that a new scheduling rotation would commence on May 1, 1996. The new rotation consisted of four consecutive days of work followed by two days off for four weeks and five consecutive days of work for the following two weeks. On June 3, 1995, dispatchers Tonia Whelan ("Whelan") and Mary Lege ("Lege"), on behalf of the dispatcher's unit, sent a letter to McCafferty expressing their view that the new schedule was too "inconsistent." On June 3, 1996, Holt sent a letter to Lege asserting that she was not in complete agreement with the June 3, 1996, letter to McCafferty. In that letter, Holt stated that she too felt that the new schedule was unacceptable. She also expressed concerns about working different shifts within the same week and the schedule's effect upon her health.

On July 18, 1996, Dr. Diab sent a letter to McCafferty requesting that he assign Holt to the day shift starting July 22, 1996. Dr. Diab conveyed that, in his medical opinion, Holt would suffer a serious relapse in her health if she was required to work the night shift for the next thirty days. Dr. Diab was also concerned that Holt may be vulnerable to other ailments as a result of the aggravation of her Fibromyalgia. On July 22, 1996, McCafferty responded to Dr. Diab's letter. He stated that he was unable to comply with Dr. Diab's request because it would cause an undue hardship on the Department. McCafferty also made reference to a collective bargaining agreement that restricted the Department's ability to change the dispatcher's schedule. The letter also informed Holt that the Department would address her concerns in the collective bargaining negotiations with the Fraternal Order of Police.

On August 27, 1996, Holt saw Dr. Diab again. Dr. Diab noted that Holt was doing fine until a recent shift change. At that time, Holt began to experience active Fibromyalgia again. On October 14, 1996, Holt sent a letter to Minek requesting

more day shifts. Sergeant David Tkachik denied that request in a letter dated October 21, 1996.

On February 3, 1997, Dr. Diab examined Holt again and noted that her Fibromyalgia worsened when she worked the night shift or shifts where she had been off only one shift before returning to work for another shift. Dr. Diab also prescribed a sleeping agent to Holt. A May 23, 1997, visit to Dr. Diab revealed that Holt's condition was primarily the same as in February 1997. Dr. Diab also examined Holt on July 15 and December 11 of the same year. On the December 11 visit, Holt's condition was slightly better than it was in May of 1997.

## II. MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT

Defendant has moved the court to strike Plaintiff's affidavit attached in support of her Brief in Opposition to Defendant's Motion for Summary Judgment ("Affidavit"). Defendant has also moved the court for summary judgment on Plaintiff's ADA and state law claims. Because the court's ruling on Defendant's Motion to Strike Plaintiff's Affidavit has the potential to affect the court's ruling on Defendant's Motion for Summary Judgment, the court will address the former first.

Defendant asserts that the Affidavit should be stricken because it contradicts Plaintiff's earlier deposition testimony. Defendant also claims that the Affidavit contains hearsay and impermissible lay witness testimony. Plaintiff argues that the statements in her deposition and affidavit testimony, while not identical, are consistent. Plaintiff also asserts that her affidavit testimony falls within the hearsay exception of statements made for the purpose of medical treatment pursuant to Federal Rule of Evidence 803(4). Finally, Plaintiff argues that her affidavit testimony is permissible because she is allowed to give lay opinion testimony concerning her own medical symptoms and conditions.

## A. CONTRADICTORY TESTIMONY

■ Generally, a party may not file an affidavit that contradicts earlier deposition testimony in an attempt to create a factual issue. *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir.1986). If a witness, who has knowledge of a fact, is questioned during her deposition about that fact, she is required to "bring it out at the deposition and [cannot] contradict her testimony in a subsequent affidavit." *Id.*

Defendant asserts that paragraph nine (9) of the Affidavit states that Holt does not exercise because she tires more easily than she used to. Defendant contends that paragraph nine of Holt's affidavit contradicts her deposition, in which she testified that she only exercises for five minutes, maybe two days a week because it bothers her knees, she experiences shortness of breath and feels warm. Holt asserts that those statements, though different, are consistent. She argues that pain in her knees, shortness of breath, and warmth are all symptomatic of her tiredness.

■ Paragraph nine of the Affidavit does not contradict Holt's deposition testimony. Defendant's argument incorrectly characterizes paragraph nine of the Affidavit. Paragraph nine of the Affidavit reads: "I have attempted to exercise to alleviate my symptoms, but have found it difficult to engage in any activity, even walking, for more than five minutes at a time, because I tire far more easily than I used to." Defendant takes that statement and places the words "plaintiff states that she does not exercise" before the actual words in paragraph nine. Defendant's Motion to Strike at 2. An examination of paragraph nine reveals that Holt never stated that "she does not exercise." In fact, she states that she has attempted to exercise. Paragraph nine of Holt's affidavit, when viewed as stated by Holt, does not contradict her earlier deposition testimony. Moreover, the shortness of breath and

warm feeling that Holt testified to is easily associated with feeling tired.

Defendant also points to paragraph forty-one (41) of the Affidavit where Holt states that she has burdened her daughter and husband with performing household tasks. Defendant argues that paragraph forty-one contradicts Holt's deposition testimony in which she testified that she could do general housekeeping, but was unable to do any heavy cleaning. Holt argues that her deposition testimony stating that she was unable to perform heavy cleaning implies that she would need help accomplishing those tasks. Thus, she burdened her daughter and husband with performing the household tasks that she was unable to perform.

Paragraph forty-one of Holt's Affidavit does not contradict her earlier deposition testimony. Holt's Affidavit does not indicate that she has allocated all of the household tasks to her husband and daughter. She only states that she has burdened them with performing household tasks for her. Her deposition testimony stated that she was unable to perform heavy cleaning. Holt's deposition testimony implies that any heavy cleaning would have to be performed by someone else. Paragraph forty-one of the Affidavit simply explains who performed the heavy cleaning.

Defendant contends that portions of Holt's Affidavit are incorrect. Defendant argues that paragraph twenty-six (26) of Holt's Affidavit, where she states that the "bargaining unit voted in favor of permanent shift elected by seniority," is incorrect. Defendant asserts that the two initiatives to vote on the scheduling of the dispatchers failed. Defendant also points to paragraph twenty-three (23) of Holt's Affidavit, where she states that "all of the prognoses from the physicians who have examined [her] indicate that [her] health will continue to decline as long as [she] continue[s] the rotating work schedule...." Defendant argues that paragraph twenty-three of Holt's Affidavit contradicts Dr. Diab's testimony that the plaintiff, at

one time, showed marginal improvement. Defendant also contends that paragraph twenty-three of Holt's Affidavit is contradicted by Dr. Wilke's testimony that he would expect reasonable improvement, if not remission, from Holt. Holt argues that her assertions are admissible because they simply disagree with the factual conclusions reached by Defendant. Holt asserts that the bargaining unit had voted in favor of permanent shifts. However, one dispatcher was allowed to change her vote. Regarding paragraph twenty-three, Holt argues that Dr. Diab's comment was taken out of context. She asserts that Dr. Diab's statement meant that he noticed marginal improvement on one particular visit from her condition on the previous visit.

Paragraphs twenty-three and twenty-six of the Affidavit do not contradict Holt's deposition testimony. First, the court notes that Defendant's argument concerning paragraph twenty-three does not fall under the rule set forth by the *Reid* case. *Reid* dealt with inadmissability of affidavits that contradict the plaintiff's earlier deposition testimony. In the instant matter, Defendant's argument disputes the conclusions that Holt drew from her physician's statements and her conclusions drawn from the events surrounding an initiative to vote on permanent shifts. Conclusions drawn from facts in the record do not constitute contradictory statements as contemplated in *Reid*. However, even if *Reid* was applicable to this issue, Holt's statements do not contradict her doctors' prognoses. Paragraph twenty-three of the Affidavit states that all the prognoses from her physicians indicate that her health would decline as long as she continued on a rotating work schedule. Holt's statement is substantiated by evidence in the record. Specifically, Dr. Diab, in his July 18, 1996, letter to McCafferty, noted that "[i]t is my medical opinion that Ms. Holt will suffer a serious relapse in her health and her Fibromyalgia will certainly worsen if she is required to work on the night shift for the next thirty days." Plaintiff's Mem-

orandum in Opposition to Summary Judgment Ex. 2. Dr. Wilke's letter of April 26, 1996, notes that "[i]nterrupted daytime sleep would certainly worsen Fibromyalgia. I have suggested to Mrs. Holt that she is a person who can only work daytime shifts." Plaintiff's Memorandum in Opposition to Summary Judgment Ex. T. Paragraph twenty-three of the Affidavit does not repeat the doctors' prognoses verbatim; however, Plaintiff's conclusions are not contradictory. In fact, Holt's conclusions are fair and plausible interpretations of the relevant evidence.

## B. HEARSAY

Defendant argues that the Affidavit contains hearsay statements. Specifically, Defendant points to paragraphs 2, 7, 13, 19, 23, 34 and 35 of the Affidavit in which Holt conveys what her physicians said about her condition. Holt argues that the statements in the relevant paragraphs are admissible as statements for the purpose of medical diagnosis or treatment pursuant to Fed.R.Evid. 803(4).

Federal Rule of Civil Procedure 56(e) states that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated within." In the instant matter, the court must determine the admissibility of several statements concerning Plaintiff's medical diagnoses. Generally, statements made by a patient for the purposes of medical diagnosis or treatment are deemed trustworthy and admissible into evidence. *Portis v. Grand Trunk Western Railroad Co.*, 28 F.3d 1214, 1994 WL 362110, at \*5 (6th Cir.1994). However, statements by a patient regarding medical opinions and diagnoses made by doctors who have examined a patient are not admissible under Fed. R.Evid. 803(4). *See Id.*

In the instant matter, the statements conveying specific findings of Plaintiff's doctors are not admissible as part of the Affidavit. Although Plaintiff has personal knowledge of her diagnoses, she may not testify to those facts in the Affidavit. The diagnoses of Holt's doctors may only be established through admission of the relevant doctors' records pursuant to Fed. R.Evid. 803(6) or the sworn testimony of these doctors. Therefore, the portions of paragraphs 2, 7, 13, 19, 23, 34 and 35 that seek to set forth specific findings of the doctors are hereby stricken from the record. The court notes that Defendant's argument on this issue, while procedurally correct, has no substantive significance. Because the record, by way of affidavits, depositions and exhibits attached to both parties' dispositive motions, is replete with the diagnoses of Holt's doctors in admissible form, any question of fact based upon these diagnoses is established elsewhere in the record.

## 3. LAY OPINION TESTIMONY

Defendant argues that paragraphs 2, 7, 10, 16, 23 and 33 of the Affidavit contain impermissible lay witness testimony. Specifically, Defendant argues that Holt is not qualified to testify concerning the definition of her disorders. Defendant also asserts that Holt is not qualified to testify concerning the cause of her condition. Pursuant to Fed.R.Evid. 701, lay opinion is admissible when it is based upon personal knowledge or observation and it is helpful to understanding the witness' testimony or determining a fact in issue. However, lay opinion on matters "appropriate for expert testimony can be admissible if a witness has personal knowledge of the facts underlying his or her opinion, the opinion is one a normal person would form from those perceptions and if the opinion is helpful in determining the facts." *Complete General Construction Co. v. Occupational Safety and Health Review Commission*, 53 F.3d 331, 1995 WL 259227 at \*2 (6th Cir.1995) (citations omitted).

Plaintiff's testimony concerning her physical condition is admissible. At pres-

ent, she has suffered with it for at least six years. Thus, Plaintiff has personal knowledge of her physical condition and its symptoms. Testimony concerning her physical condition is also central to the factual issues in the instant matter. Therefore, those portions of the Affidavit in which Holt describes her physical condition do not constitute impermissible lay opinion and will not be stricken. Moreover, an examination of the Affidavit evinces that Holt does not speak of any causal factors of her condition in the relevant paragraphs. Instead, with the exception of paragraph 10, she conveys the diagnoses of her doctors. In paragraph 10, Holt asserts that cigarette smoke aggravates her respiratory condition. Paragraph 10 is admissible as lay opinion testimony. Plaintiff's statement is based on her own knowledge of her reaction to cigarette smoke. Moreover, her reaction to cigarette smoke is pertinent to a fact issue in the instant matter. Thus, paragraph 10 does not constitute impermissible lay witness testimony and will not be stricken.

Paragraphs 2 and 7 of the Affidavit are also admissible. Plaintiff has dealt with the effects of her conditions for several years. She has visited numerous doctors and received diagnoses concerning these same illnesses. At this time, Plaintiff has dealt with her condition enough to be able to give a basic definition of what it entails. Moreover, Plaintiff's condition and its characteristics are central to a fact issue in the instant matter, specifically, the nature of her illness.

Those portions of the Affidavit which recount Plaintiff's diagnoses are inadmissible and Defendant's Motion to Strike those portions is granted. The Affidavit does not contain: (1) testimony that contradicts earlier deposition testimony; or (2) inadmissible lay witness testimony and Defendant's Motion to Strike those portions of the Affidavit is denied. Docket No. 48 is denied.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this court must view the evidence in

a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## B. LAW AND ANALYSIS

### 1. Count I: ADA Reasonable Accommodation Claim

In the first count of Plaintiff's Amended Complaint ("Complaint"), Holt claims that Defendant refused her request for a reasonable accommodation in violation of the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity" and "denying employment opportunities to a[n] ... employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee of applicant." 42 U.S.C. § 12112(b)(5)(A).

■ Holt must establish a *prima facie* case of discrimination. Specifically, she must prove that: (1) she has a disability; (2) she was qualified for the job; and (3) she either was denied a reasonable accommodation for her disability or was subject to an adverse employment decision that was made solely because of her disability. *See Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir.1996)

### a. Is Holt a Disabled Person as Contemplated by the ADA?

■ The ADA defines "disability" with respect to an individual as "a physical or mental impairment that substantially limits one or more of the major life activities of [the affected] individual." 42 U.S.C. § 12102(2)(A). The term "substantially limited" has been defined as follows:

(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

*Penny v. United Parcel Service,* 128 F.3d 408 (6th Cir.1997). However, the determination of whether an individual is disabled is a fact specific determination that should be made without regard to medicine or other mitigating factors. *Gilday v. Mecosta,* 124 F.3d 760, 763 (6th Cir.1997) ("[a] person with a serious disability who depends on medicine or a medical device to ameliorate the effects of that disability nonetheless has a limit on a major life activity: without the corrective measure the person would be unable to perform a major life activity.") It is well settled that working is considered a major life activity. *See Gilday,* 124 F.3d at 760; *Penny,* 128 F.3d at 414.

Holt argues that her condition substantially limits her ability to work, sleep and perform manual tasks. She asserts that, due to her medication, she has been able to continue in her capacity as a dispatcher for Defendant. However, Holt argues, without the benefit of her medication she would be unable to perform her duties. Defendant argues that Holt is not a disabled individual as defined by the ADA because she is not limited in a major life activity. Specifically, Defendant asserts that Holt's aches and pains associated with Fibromyalgia do not rise to the level of a substantial limitation on a major life activity. Defendant also points to the fact that Holt is still able to perform her job, notwithstanding her condition.

■ There exists a question of fact concerning whether Holt is substantially limited in her ability to work. It is not disputed that Holt is able to carry out her duties as required by Defendant. However, the determination of whether Holt is substantially limited in her ability to work must be made without consideration of mitigating circumstances such as medication. *See Gilday,* 124 F.3d at 762. The record reflects Holt's numerous trips to several doctors seeking treatment for her condition. Moreover, there is evidence that Holt was taking a substantial amount of medication. For instance, on April 26, 1996, Dr. Wilke noted that Holt was taking "Calan–SR 180 mg. one per day, Prilosec 20 mg. before bed, Relafin 750 mg. twice daily and Cyclobenzaprine 10mg. one or two before sleep." Defendant's Motion for Summary Judgment Ex. T. The absence of those medications will surely have an affect upon Plaintiff. However, the relevant inquiry is whether, without the benefit of her medications, she is substantially limited in her ability to work. Plaintiff asserts that, due to her medication, she is able to perform her job. The extent to which Holt is able to perform her duties without the benefit of medication is not entirely clear.

Even if the correct standard required the determination of disability to be made by taking into consideration mitigating circumstances, such as medicine, there still exists a question of fact. The ADA requires that a person be substantially limited in a major life activity, not completely unable to perform that activity. Thus, the mere fact that Plaintiff continues to perform her duties at the cost of her health, does not establish, as a matter of law, that she is not substantially limited in her ability to work. Therefore, the court finds that Plaintiff has presented evidence that creates a question of fact on the issue of whether her condition substantially limits her ability to work.

Because an issue of material fact exists concerning Holt's ability to work, the court does not address the issues of whether Holt's sleep or manual task difficulties constitute a limitation on a major life activity.

### b. Is Holt qualified for the Job?

The parties do not dispute Holt's qualifications for the job. She has served in her capacity as dispatcher for over twenty years. Thus, the court finds that Holt has satisfied this prong of her *prima facie* case.

### c. Was Holt Denied a Reasonable Accommodation?

The ADA provides that the term "reasonable accommodation" may include:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). To satisfy her burden of proposing a reasonable accommodation, Holt must "suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 781-82 (6th Cir.1998) (citations omitted).

The relevant accommodation must not impose an undue hardship on the employer. 42 U.S.C. § 12111(10). If the employee establishes that a reasonable accommodation is possible, then the employer bears the burden of proving that the accommodation is unreasonable and imposes an undue hardship on the employer. *Cehrs*, WL 548837 at *6. Relevant factors in determining whether an accommodation constitutes an undue hardship include:

(i) the nature and cost of the accommodation needed . . . ;

(ii) the overall financial resources of the facility or facilities involved in provision of the reasonable accommodation; the number of persons employed at the facility; the effect on such expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(iv) the type of operation or operations of the covered entity, including the composition, structure, and function of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10)(B). Moreover, EEOC regulations suggest that "the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business" should be considered. 29 C.F.R. § 1630.2(p)(2)(v).

Plaintiff looks to the term "modified work schedules" when arguing that her request to be permanently assigned to the day shift constitutes a reasonable accommodation. Holt has set forth sufficient evidence, in the form of letters of request and doctors' letters, to establish the fact that she has requested a permanent day shift. Defendant argues that Holt's accommodation is not reasonable because it will cause an undue hardship upon the Department. Defendant argues that allowing Holt to work a permanent day shift would cause an undue hardship because the other dispatchers would have to work a less desirable shift. Defendant suggests that requiring the other dispatchers to work a less desirable shift would violate their rights. Defendant also argues that it is restricted in its ability to honor Holt's request by a collective bargaining agreement that covers the dispatchers.

Holt's request for a permanent change to the day shift constitutes a reasonable accommodation. The language of the statute is clear. The ADA considers a

modified work schedule to be a reasonable accommodation. Moreover, there is no evidence that the costs of a permanent shift clearly exceeds the benefits associated with such a change. Defendant merely argues that the shift change would impose an undue hardship on the other dispatchers and briefly mentions, without elaboration, a collective bargaining agreement. Thus, the costs of Holt's accommodation, facially, do not outweigh any expense Defendant may incur instituting a shift change. The court finds that Holt's request to be moved to a permanent day shift is a reasonable accommodation as contemplated by the ADA. However, Holt's accommodation must be examined in the context of the instant matter. Specifically, the court must examine the issue of whether Holt's accommodation imposes an undue hardship upon Defendant.

█ There exists an issue of fact concerning whether Holt's proposed accommodation would impose an undue hardship upon Defendant. Defendant bears the burden of showing that a proposed reasonable accommodation would impose an undue hardship. *See Cehrs*, WL 548837 at \*6. Defendant argues that switching to permanent shift assignments would impose an undue hardship upon the Department because the other dispatchers oppose such a schedule. However, employee disapproval of a proposed accommodation, in and of itself, does not rise to the level of undue hardship. *Draper v. U.S. Pipe and Foundry Co.*, 527 F.2d 515 (6th Cir.1975); *Cummins v. Parker Seal Co.*, 516 F.2d 544 (6th Cir.1975). In *Draper*, the court examined the issue of whether shift changes, for the purpose of accommodating an employee's religious observance of a Saturday Sabbath, constituted an undue hardship

when those changes resulted in other employees "grumbling" about the changes.[4] The *Draper* court, in finding that no undue hardship existed, reasoned that:

> [t]he objections and complaints of fellow employees, in and of themselves, do not constitute undue hardship in the conduct of an employer's business. If employees are disgruntled because an employer accommodates its work rules to the [accommodation] needs of one employee, ... such grumbling must yield to the single employee's right to [employment despite their disability]. Moreover, the fact that [disability on the part of] one employee forces other employees to [work an altered schedule] does not demonstrate an undue hardship on the employee's business. It is conceivable that employee morale problems could become so acute that they would constitute an undue hardship. The EEOC, in interpreting Regulation 1605, has noted the possibility of undue hardship when the employer can make a persuasive showing that employee discontent will produce 'chaotic personnel problems.'

*Draper*, 527 F.2d at 520 (citations omitted). In sum, the Defendant must come forth with evidence beyond that which indicates that there will be some disapproval of the accommodation from other employees.

The court finds that the evidence Defendant has set forth in the instant matter merely rises to the level of "employee grumbling" as contemplated in *Draper*. The statements of Whelan and Lege are the only evidence set forth by Defendant to establish that Plaintiff's accommodation would impose an undue hardship upon the Department.[5] While Defendant argues

---

4. Title VII analysis is also applicable to ADA claims. *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876 (6th Cir.1996).

5. Although it is not mentioned in Defendant's Motion for Summary Judgment, Whelan does state that she too suffers from Fibromyaglia. However, contrary to Plaintiff, she states that the permanent shift would adversely affect

her health. The facts of this situation lend themselves to multiple interpretations. However, there is not enough evidence to find, as a matter of law, that the accommodation would impose an undue hardship upon the Department.

that the dispatcher unit is very small, there still exists a question of fact concerning what effect a change to permanent shifts would have upon the Department. Defendant has set forth no evidence indicating that employee opposition to the shift change could cause significant personnel problems. Defendant has set forth no evidence indicating how it is limited by the collective bargaining agreement. If Defendant is actually prohibited from assigning the other dispatchers to another shift, Holt's accommodation may arguably constitute an undue hardship. However, Defendant's restrictions, if any, have not been established. Defendant has set forth no evidence indicating that it would incur a financial strain or difficulties in staffing the dispatcher unit if a permanent shift schedule was instituted. Defendant simply argues that it would be unjust for other dispatchers to be required to work a less desirable shift. Accordingly, that evidence, in and of itself, is not sufficient to show an undue hardship upon the Department. It should be noted that the court's decision on this issue does not mean that the possibility of an undue hardship upon Defendant does not exist. Rather, Defendant has not put forth sufficient evidence of that possibility to carry its burden. Thus, at this point, Defendant has failed to establish that Holt's accommodation would cause an undue hardship.

Because there exists a genuine issue of fact concerning whether: (1) Holt's condition substantially limits her ability to work; and (2) her proposed reasonable accommodation imposes an undue hardship on Defendant, Defendant's Motion for Summary Judgment on Plaintiff's ADA reasonable accommodation claim (count 1) is denied.

### 2. Count II: Discrimination in Employee Scheduling ORC § 4112.02 Claim

In the second count of the Complaint, Plaintiff's asserts that Defendant failed to provide a reasonable accommodation for her disability in violation of ORC 4112.02

*et seq.* Ohio courts are guided by federal decisions construing the ADA, Title VII and analagous civil rights laws. *Plumbers and Steamfitters Committee v. Ohio Civil Rights Commission,* 66 Ohio St.2d 191, 202 (1981). Because Plaintiff's state law discrimination in scheduling (count two) claim is identical to its ADA reasonable accommodation claim (count one), the court need not analyze Plaintiff's second count separately. The above analysis of Plaintiff's ADA claim applies equally to Plaintiff's state law discrimination in employee scheduling claim. Thus, Defendant's Motion for Summary Judgment on Plaintiff's discrimination in employee scheduling in violation of ORC § 4112.02 (count 2) is DENIED based upon the same grounds.

### 3. Count III: Discrimination in Conditions of Employment ORC § 4112.02

The third count of the Complaint, while also brought under ORC § 4112.02(A), is based upon a different incident. Specifically, Plaintiff asserts that Defendant unlawfully discriminated against her by failing to enforce a smoking ban. Plaintiff argues that despite an air ionizer placed in her work area, her asthma is aggravated by smoke that filters into her work area from employees smoking with the back door open. Defendant argues that Dr. Rao could not establish that secondhand smoke actually aggravated Plaintiff's asthma. Defendant also asserts that the smoking ban is adequately enforced and the ionizer in the squad room is a reasonable accommodation.

In relevant part, ORC § 4112.02(A) states:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the . . ., handicap, . . . of any person to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges

of employment, or any matter directly or indirectly related to employment.

The elements of a *prima facie* case of discrimination pursuant to ORC 4112.02(A) are similar to those set forth by the ADA. However, in the instant matter, the test for Plaintiff's state law claim differs slightly from her ADA reasonable accommodation claim. To establish a *prima facie* case where the plaintiff claims discrimination in violation of ORC § 4112.02(A), the plaintiff must establish that: (1) she was handicapped (2) that an adverse employment action was taken by the employer, at least in part, because the individual was handicapped, and (3) the person, though handicapped, can safely and substantially perform the essential functions of the job in question. *City of Columbus Civil Service Commission v. McGlone*, 82 Ohio St.3d 569, 570, 697 N.E.2d 204, 205 (1998). Again, in this instance, federal ADA law is instructive when analyzing the elements of Plaintiff's *prima facie* case. *See Id.*

■ In the instant matter, as previously discussed, there exists an issue of material fact concerning Holt's status as a disabled person. Additionally, it is not disputed that Plaintiff can perform the essential functions of her job. Thus, Holt meets prongs one and three of her *prima facie* case requirements. However, Holt does not fulfill the second prong of her *prima facie* case requirements. Specifically, she has failed to establish that Defendant refused to enforce the smoking ban, in part because she was disabled. While there may exist an issue of fact concerning whether Defendant's alleged failure to enforce the smoking ban constitutes an adverse employment action, Holt sets forth no evidence to connect that alleged adverse action to her disability. Without evidence that establishes that Defendant took an adverse action because of her disability, Holt cannot argue that Defendant discriminated against her based on her disability. Thus, Defendant is entitled to judgment as a matter of law on Plaintiff's discrimination in conditions of

employment based on handicap claim (count 3) and Defendant's motion for summary judgment on this claim is GRANTED.

### 4. Count IV: Retaliation ADA and ORC § 4112 et seq.

■ In the fourth count of the Complaint, Plaintiff asserts that Defendant retaliated against her after she filed this law suit in violation of the ADA and ORC § 4112 *et seq.* Retaliation claims are analyzed the same under the ADA and Title VII. *Penny* 128 F.3d at 417. To establish a *prima facie* case of retaliation a plaintiff must establish that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action. *Id.* If the plaintiff successfully establishes a *prima facie* case of retaliation, "the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* The plaintiff carries the burden of proving that the proffered reason for the action was pretextual. *Id.*

In the instant matter, there is no dispute concerning whether Holt engaged in a protected activity. Rather, the parties dispute the second and third prongs of the retaliation *prima facie* case. Holt points to three incidents in support of her claim that she suffered an adverse employment action. First, Holt asserts that, as of the time she filed her amended complaint to add a retaliation claim, she was required to work more double back shifts than any other employee. She argues that another dispatcher was assigned more double back shifts after the retaliation claim was filed. Second, Holt argues that Defendant ignored a vote by the dispatchers to institute a permanent shift schedule. Finally, Holt asserts that she was denied a shift change request with a part-time dispatcher when other full-time dispatchers were allowed to switch with part-time dispatchers. Defendant asserts that Holt was not given an

unfair number of double back shifts. Defendant further argues that Holt has failed to establish a causal link between the alleged adverse action and the protected activity. Defendant also argues that Holt was denied her shift change request with the part-time dispatcher because she was unable to cover the entire shift that she was requesting.

Plaintiff has failed to establish a *prima facie* case of retaliation. Plaintiff's argument that, at the time of her amended complaint, she was assigned to work more double back shifts than any other dispatcher does not constitute an adverse action. The natural inference from Holt's argument is that she was assigned more double back shifts between the time she filed her initial complaint and the time she amended her complaint. However, Holt does not allege that the frequency of her double back shifts increased after she filed her initial complaint. She merely asserts that she had worked more double back shifts than any other dispatcher at the time of her amended complaint. Without placing her allegation concerning increased double back shifts in the proper time frame, it cannot be argued that the relevant actions occurred as a result of Holt engaging in the protected activity of filing this lawsuit. McCafferty's affidavit shows that Defendant was required to work the second highest number of double back shifts between July 21, 1996, and July 19, 1997. *See* Defendants Motion for Summary Judgment Ex. A. Even assuming that Holt established she was unfairly subjected to more double back shifts, she has set forth no evidence establishing the required causal connection between the employment action and her protected activity.

Holt's assertion that Defendant refused to institute a permanent shift schedule, despite a vote for such a schedule, may arguably be considered an adverse employment action. However, the actual adverse nature of that incident is not relevant in this context if a causal connection cannot be established between that action

and the protected activity. Plaintiff sets forth no arguments to establish the necessary causal link between the adverse action and protected activity. Plaintiff asserts that the incident took place, however, she does not attempt to connect that incident to her protected activity. Thus, she has failed to demonstrate how that incident is causally connected to her engaging in the protected activity of bringing this suit.

Finally, Holt's argument that denial of her request to change shifts with a part-time employee cannot be viewed as an adverse employment action. While Holt's initial argument suggests that she may have been denied her request for retaliatory reasons, the record reveals that Holt was denied the shift change because she was not able to cover the entire shift that she was requesting. Because Holt was unable to cover the shift in question, it cannot be argued that her denial was an adverse action. However, assuming arguendo, that the shift change denial was an adverse action, Holt has still failed to establish the causal connection between the protected activity and this incident. Because Holt has not established a causal connection between any of the alleged adverse employment actions and her protected activity, she has failed to fulfill the third prong of her *prima facie* case of retaliation.

Plaintiff's state retaliation claim is also analyzed under the same law as the ADA retaliation claim. Thus, Defendant is entitled to judgment as a matter of law on Plaintiff's state law retaliation claim and Defendant's motion for summary judgment on Plaintiff's claim of retaliation in violation of ORC § 4112.02 is GRANTED based upon the same grounds. As such, Defendant is entitled to judgment as a matter of law on Plaintiff's retaliation claim and Defendant's Motion for Summary Judgment on Plaintiff's ADA and state retaliation claims (count 4) is GRANTED.

## C. CONCLUSION

For the reasons set for above, Defendant's Motion For Summary Judgment (Docket No. 39) on Plaintiff's ADA and ORC retaliation claims (count 4) and Plaintiff's ORC discrimination in conditions in employment claim (count 3) is granted. Defendant's Motion for Summary Judgment on Plaintiff's ADA and ORC reasonable accommodations claims (counts 1 and 2) is denied.

IT IS SO ORDERED.