Keith T. WILHELM,, Plaintiff,

v.

CSX TRANSPORTATION, INC., Defendant.

No. 3:00cv7099.

United States District Court, N.D. Ohio, Western Division.

Sept. 20, 2001.

Arvin J. Pearlman, Elaine L. Livingway, Pearlman & Pianin, Southfield, MI, for Plaintiff.

James R. Carnes, Robert M. Anspach, Anspach, Serraino, Meeks & Nunn, Toledo, OH, for Defendant.

## ORDER

CARR, District Judge.

Plaintiff Keith Wilhelm, a former smoker diagnosed with asthma, alleges that defendant CSX Transportation, Inc. ("CSX") failed to enforce its policy prohibiting smoking in certain areas of the workplace. As a result, plaintiff alleges he suffered injury from second-hand smoke while employed on the premises. He seeks to recover for these injuries under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et seq. Plaintiff also alleges that CSX's failure to enforce its policy constituted discrimination on the basis of handicap pursuant to Ohio Revised Code § 4112.02. Jurisdiction arises under 28 U.S.C. § 1331. Pending is CSX's motion for summary judgment. For the following reasons, CSX's motion is granted.

## BACKGROUND

Since 1979, plaintiff has worked for CSX as a locomotive engineer. Currently, plaintiff works at CSX's Walbridge, Ohio terminal. In May, 1997, plaintiff was diagnosed with severe asthma.

Effective May 15, 1996, CSX adopted a policy prohibiting smoking in all buildings in the Walbridge terminal except for certain designated areas. In February, 1998, CSX extended its no-smoking policy to a full ban on smoking in all buildings in the Walbridge terminal and in January, 1999, to all locomotive cabs.

Plaintiff alleges that since February, 1998, CSX has failed to enforce its no-smoking policy at the Walbridge terminal, in the locomotive cabs, and company controlled vehicles. Plaintiff alleges that as a result of the failure to enforce the no-smoking policy, plaintiff is subjected to smoke in the workplace on a daily basis. Plaintiff alleges that on two separate occasions, November 29, 1998, and August 19,

1999, heavy second-hand cigarette smoke in the workplace caused asthma attacks requiring emergency medical care.

On several occasions, plaintiff told CSX of his exposure to second-hand smoke at Walbridge and demanded that CSX vigorously enforce the no-smoking policy. Plaintiff also submitted two separate, written incident reports to CSX, each detailing the presence of unauthorized smoking at the Walbridge terminal. Plaintiff's physician also notified CSX that plaintiff's workplace should be smoke free to control his asthma.

Based on these allegations, plaintiff contends that CSX failed to provide a reasonably safe work environment in violation of the FELA. Plaintiff also contends that CSX's failure to enforce its no-smoking policy constitutes handicap discrimination in violation of O.R.C. § 4112.02. Plaintiff seeks monetary damages for the injuries he alleges CSX caused him.

## ANALYSIS

### I. Plaintiff's Claim Under the FELA

■ Congress enacted the FELA as a remedial and humanitarian statute intended "to afford relief to employees from injury incurred in the railway industry." *Aparicio v. Norfolk & Western Ry. Co.*, 84 F.3d 803, 807 (6th Cir.1996) (quoting *Edsall v. Penn Cent. Transp. Co.*, 479 F.2d 33, 35 (6th Cir.1973)). To serve its remedial purpose and a legislative desire to preserve the right to a jury trial, the Act is to be liberally construed. *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 806 (6th Cir.1985). Despite this liberal construction, it is still the function of the trial judge to pass upon the sufficiency of the evidence presented. *Id.* at 807. To create a jury question on the issue of liability under the FELA, a plaintiff is still required to present more than a scintilla of evidence, but not much more. *Aparicio*, 84 F.3d at 810.

The FELA creates a tort remedy for railroad employees injured on the job as a result of the negligence of their employers. The statute provides:

> Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier....

45 U.S.C. § 51.

■ To recover, a FELA plaintiff must present more than a scintilla of evidence to prove that: 1) an injury occurred while the plaintiff was working within the scope of his or her employment with the railroad, 2) the employment was in the furtherance of the railroad's interstate transportation business, 3) the railroad was negligent, and 4) the railroad's negligence played some part in causing the injury for which compensation is sought under the Act. *Aparicio*, 84 F.3d at 810 (citing *Green*, 763 F.2d at 808).

■ A railroad employer, however, is not the insurer of its employees' safety. *Bridger v. Union Ry. Co.*, 355 F.2d 382, 386 (6th Cir.1966). Rather, liability under the FELA arises from employer negligence not from employee injury, and that negligence must be the cause of the injury. *Brady v. Southern Ry. Co.*, 320 U.S. 476, 484, 64 S.Ct. 232, 88 L.Ed. 239 (1943). The plaintiff must demonstrate that the employer's negligence played at least some part in causing plaintiff's injury. A FELA plaintiff asserting a cause of negligence against his or her employer "must prove the traditional common law elements: duty, breach, foreseeability, and causation." *Hardyman v. Norfolk & Western Ry., Co.*, 243 F.3d 255, 258 (6th Cir.2001); *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir.1990).

■ Under the FELA, an employer has a duty to provide its employees with a

reasonably safe place to work. *Adams,* 899 F.2d at 539; *Padgett v. Southern Ry. Co.,* 396 F.2d 303, 306 (6th Cir.1968). The first issue is whether the presence of second-hand cigarette smoke in the workplace breached this duty.[1] While this is a novel issue under the FELA, a handful of state courts have dealt with it in terms of an employer's common law duties. *See Gordon v. Raven Sys. & Research, Inc.,* 462 A.2d 10, 14 (D.C.1983); *Smith v. Western Elec. Co.,* 643 S.W.2d 10, 37 A.L.R.4th 473 (Mo.App.1982); *Shimp v. New Jersey Bell Tel. Co.,* 145 N.J.Super. 516, 368 A.2d 408 (N.J.Super.Ch.1976); *McCarthy v. Department of Soc. & Health Servs.,* 110 Wash.2d 812, 759 P.2d 351 (Wash.1988). In *Shimp, McCarthy,* and *Smith,* the courts found a common law duty to keep workplaces smoke-free, while the court in *Gordon* disagreed.

In *Shimp,* the plaintiff claimed a sensitivity to second-hand cigarette smoke in the workplace and asked the court to provide injunctive relief. The plaintiff asserted that the presence of second-hand smoke created an unsafe workplace in violation of the employer's common law duty to provide safe and healthful working conditions.

The plaintiff in *Shimp* provided the court with reports, studies, and affidavits from eight experts detailing the hazardous effects of second-hand smoke on nonsmokers. In light of these extensive exhibits, the court in *Shimp* took judicial notice of the hazardous nature of second-hand smoke.

Once the court determined that second-hand cigarette smoke was a health hazard, it held that it was reasonable to impose the duty on the employer to abate such hazard.[2] The court granted injunctive relief and restricted smoking to designated areas.

In *Gordon,* in contrast, the court rejected the contention that an employer has a common law duty to provide its employees with a smoke free workplace. As in *Shimp,* the plaintiff asserted that the presence of cigarette smoke in the workplace caused discomfort and violated the employer's common law duty to provide a safe and healthful work environment.

Unlike the plaintiff in *Shimp,* the plaintiff in *Gordon* failed to provide any scientific evidence showing the harmful effects of second-hand smoke on nonsmokers generally. The court noted this omission, stating that the court in *Shimp* had relied on a "plethora of scientific studies and affidavits of medical experts before concluding that cigarette smoke posed a serious health threat to all workers." *Gordon,* 462 A.2d at 14. The court concluded that an employer owed no duty to adapt its workplace to the "particular sensitivities of an individual employee" and denied relief to the plaintiff.[3] *Id.* at 13.

---

1. Plaintiff eschewed any argument that CSX owed him a particular duty because of his hypersensitivity to smoke. Rather, plaintiff argues that CSX owes all of its employees a duty to keep the work areas smoke-free. In doing so, plaintiff failed to raise a potential argument that other courts have accepted: namely, that the railroad had a duty not to aggravate a known disability by assigning him to work in circumstances which reasonable people would realize might aggravate his disability. *See Walsh v. Consolidated Rail Corp.,* 937 F.Supp. 380, 383 (E.D.Pa.1996); *Massi-*

*miani v. Monongahela Ry. Co.,* 339 F.Supp. 832, 833 (W.D.Pa.1972).

2. Based upon significant scientific data, the court concluded that the portion of the population especially sensitive to cigarette smoke is so significant that it is reasonable for an employer to foresee that the presence of second-hand smoke will cause some of its employees discomfort.

3. The court in *Gordon* passed on whether the workplace at issue would have been unsafe had the plaintiff presented scientific evidence

As in *Gordon*, plaintiff here has provided no evidence of the harmful effects on others of second-hand smoke. Instead, plaintiff relies solely upon the fact that CSX created its no smoking policy with the intention of improving employee welfare. Assuming this is true, the question of whether a smoke-filled workplace is not reasonably safe remains unanswered.

Plaintiff must show that it is more likely than not that second-hand cigarette smoke is a health hazard. Without providing any evidence that the presence of second-hand smoke on the Walbridge premises is a health hazard, plaintiff has failed to meet this burden.

The FELA has not made plaintiff's burden particularly difficult. In fact, plaintiff could have met his burden by either: 1) providing direct evidence about unsafe air-quality at the Walbridge terminal; or 2) asking me to take judicial notice of the hazardous nature of second-hand smoke.[4] Having done neither, plaintiff has left the record without a foundation for determining that second-hand cigarette smoke at the Walbridge terminal created an unsafe work environment.

Because plaintiff has failed to submit any proof that second-hand cigarette smoke has created a hazardous condition at the Walbridge terminal, I must grant CSX's summary judgment motion with respect to plaintiff's FELA claim.[5]

## II. Ohio Revised Code § 4112.02: Handicap Discrimination

Under Ohio law, it is unlawful "for any employer, because of the ... handicap, ... of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." O.R.C. § 4112.02(A). Defendant argues it has not discriminated against plaintiff on the basis of handicap and is, therefore, entitled to summary judgment.

The plaintiff can establish a prima facie case of handicap discrimination by demonstrating "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person,

---

of the dangers of second-hand smoke to non-smokers generally.

4. I note that plaintiff was granted additional time, after his summary judgment motion was decisional, to obtain and submit scientific or other evidence about the health hazards to non-smokers from second-hand smoke. He did not do so, though such evidence appears, from a review of the literature, to be available. *See* Kathryn M. Doolan & Robert A. Indeglia, Jr, *A Call for Action: The Burning Issue of Smoking in the Workplace*, 5 J. Contemp. Health L. & Pol'y 221 (1989); Jim Michael Hansen, *What Employers Need to Know About Smoking in the Workplace*, 21 Colo. Law. 421 (1992); Alan B. Horowitz, *Terminating the "Passive" Paradox: A Proposal for Federal Regulation of Environmental Tobacco Smoke*, 41 Am. U.L.Rev. 183 (1991); Raymond L. Paolella, *The Legal Rights of*

*Nonsmokers in the Workplace*, 10 U. Puget Sound L.Rev. 591 (1987); Kathleen Sablone, Note, *A Spark in the Battle Between Smokers and Nonsmokers: Johannsen v. New York City Department of Housing Preservation & Development*, 36 B.C. L.Rev. 1089 (1995); Donna S. Stroud, *When Two Rights Make a Wrong: The Protection of Nonsmokers' Rights in the Workplace*, 11 Campbell L.Rev. 339 (1989). Even though I uncovered these materials during my work on this opinion, I have no obligation to construct the record *sua sponte* for the plaintiff.

5. I note that plaintiff also failed to ask for injunctive relief. In light of plaintiff's apparently nominal monetary damages, an injunction seems to be the appropriate form of relief, had plaintiff met his burden of proof. *See Smith*, 643 S.W.2d at 13; *Shimp*, 368 A.2d at 416.

though handicapped, can safely and substantially perform the essential functions of the job in question." *City of Columbus Civil Serv. Comm'n v. McGlone,* 82 Ohio St.3d 569, 571, 697 N.E.2d 204 (1998).

Defendant contends plaintiff cannot establish a prima facie case of handicap discrimination because defendant did not take an adverse employment action against plaintiff, at least in part, because plaintiff was handicapped.[6] Specifically, defendant argues: 1) defendant did not fail to enforce a smoking ban because of plaintiff's handicap, and 2) co-worker and managerial ostracism of plaintiff is not an adverse employment action. I agree.

██ Because the Ohio Supreme Court has not addressed the type of act that qualifies as an adverse employment action, cases decided under the Americans with Disabilities Act provide guidance. *See id.* at 573, 697 N.E.2d 204 ("The Americans with Disabilities Act ('ADA') is similar to the Ohio handicap discrimination law.... We can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law.").

██ An adverse employment action is a material adverse change in the terms and conditions of plaintiff's employment. *Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir.1996) ("Assuming ... [plaintiff] could establish that she had a disability under the ADA, she would still be required to show, as part of her prima facie case, that the employer's actions about which she complains were 'materially adverse.' ") (citing *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994); *Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987); *Cherry v. Thermo Electron Corp.,* 800 F.Supp. 508, 511 (E.D.Mich.1992); 42 U.S.C. § 12112(a)).

The occurrence of an adverse employment action is, however, not sufficient by itself to meet the second element of the plaintiff's prima facie case. An employer must take the adverse employment action, at least in part, because the individual was handicapped. *McGlone,* 82 Ohio St.3d at 571, 697 N.E.2d 204; *see also Holt v. Olmsted Township Bd. of Trustees,* 43 F.Supp.2d 812, 826 (N.D.Ohio 1998) ("However, Holt does not fulfill the second prong of her prima facie case requirements.... Holt sets forth no evidence to connect that alleged adverse action to her disability.").

### A. Smoking Ban

██ Defendant argues that any alleged failure to enforce a smoking ban was not done "because of plaintiff's special sensitivity to cigarette smoke." (Doc. 72 at 15.) Plaintiff argues co-worker and managerial treatment demonstrates defendant failed to enforce a smoking ban because of plaintiff's handicap. In his deposition, plaintiff testified,

Q: Except for the fact—well, as a result of your asthma and your resultant sensitivity to second hand smoke has CSX treated you differently from the way it treats any other employees?

A: Yes. All the time.

Q: How?

A: I'm ostracized. People make fun of me. My name is on the bathroom wall. And all that is not a normal employee-employer relationship. And it goes on by management as well as other employees.

(Doc. 30 at 95.)

In *Holt, supra,* the court suggested that an employer's failure to enforce a smoking

---

6. Because defendant failed to dispute whether plaintiff was handicapped or can safely and substantially perform the essential functions of the job, I decline to address these arguments and find plaintiff has met his prima facie case on these issues.

ban could qualify as an adverse employment action. 43 F.Supp.2d at 826 (noting that "[T]here may exist an issue of fact concerning whether Defendant's alleged failure to enforce the smoking ban constitutes an adverse employment action....."). The court also made clear, however, that this failure to enforce a smoking ban still must result, at least in part, because of plaintiff's handicap. *Id.*

While plaintiff's testimony demonstrates plaintiff may be treated differently because of his asthma or sensitivity to smoke, his testimony does not establish defendant failed to enforce a smoking ban, at least in part, because of plaintiff's handicap. Plaintiff's testimony simply has not established the necessary connection between the treatment plaintiff encounters from co-workers and management and any failure to enforce a smoking ban.

Plaintiff may be ostracized by co-workers and management. Plaintiff's testimony may demonstrate co-worker and managerial opposition to plaintiff's desire to enforce the smoking ban. Yet, his testimony does not show his handicap had any effect on defendant's enforcement, or lack thereof, of its smoking ban. The ostracism of plaintiff does not demonstrate that defendant failed to enforce a smoking ban, at least in part, because of plaintiff's handicap.

### B. Co–Worker and Managerial Ostracism

Defendant argues the ostracism of plaintiff is not an adverse employment action and, furthermore, plaintiff has not presented evidence that plaintiff was ostracized, at least in part, because of plaintiff's handicap or special sensitivity to smoke. (Doc. 70 at 15–16.) Plaintiff argues that "being ostracized and belittled" by co-workers and management can be considered as adverse employment action. (Doc. 73 at 17.)

As stated previously, an adverse employment action requires a materially adverse change in the terms and conditions of employment. *Kocsis,* 97 F.3d at 885. In *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir.1999), the Sixth Circuit stated,

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

(citing *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir.1993)) (a lowered employment performance rating and a threat to discharge without the authority to do so did not constitute adverse employment actions in a Title VII retaliation case).

Incivility and ostracism by co-workers and supervisors do not necessarily rise to the level of adverse employment actions. (*See Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261,—(4th Cir.2001)) ("Second, Matvia's claim of retaliation based on the incivility of coworkers, most of which constituted refusals to speak with her, must fail because Matvia cannot establish that she suffered adverse employment action."); *Scusa v. Nestle USA Co., Inc.,* 181 F.3d 958, 969–70 (8th Cir.1999) ("We hold that, without evidence of some more tangible change in duties or working conditions that constitute a material employment disadvantage, general allegations of co-worker ostracism are not sufficient to rise to the level of an adverse employment action for purposes of Title VII."); *Munday v. Waste Mgmt., Inc.,* 126 F.3d 239,

243 (4th Cir.1997) ("In no case in this circuit have we found an adverse employment action to encompass a situation where the employer has instructed employees to ignore and spy on an employee who engaged in a protected activity, without evidence that the terms, conditions, or benefits of her employment were adversely affected."); *Manning v. Metropolitan Life Ins. Co.,* 127 F.3d 686, 692 (8th Cir.1997) (co-worker and supervisor animus could not constitute adverse employment action in a Title VII retaliation case); *see also Hopes v. City of Cleveland,* No. 97–3595, 1998 WL 808222, **8–9, 1998 U.S.App. LEXIS 29572, at *26–27 (6th Cir. Nov. 16, 1998) (In a Title VII retaliation case based on antagonism and hostility by a supervisor and co-workers, the court stated, "Retaliatory harassment may be actionable as long as the adverse employment action suffered is material. Therefore, as with hostile environment sexual harassment, retaliatory harassment by a supervisor that occurs prior to any tangible employment decision must be severe or pervasive to be actionable."); *Meyer v. City of Centerline,* 242 Mich.App. 560, 619 N.W.2d 182, 189 (2000) ("Where the harassment is sufficiently severe, a supervisor's failure to take action to respond can constitute a materially adverse change in the conditions of employment.").

■ Co-worker and managerial ostracism of Wilhelm does not constitute an adverse employment action. Plaintiff has not established that the ostracism and "making fun of" plaintiff rise to a material change in the terms and conditions of employment. (Doc. 30 at 95.) Plaintiff's testimony has not demonstrated that any ostracism was more disruptive than an inconvenience to plaintiff's job responsibilities. Because this Court finds the ostracism of plaintiff was not an adverse employment action, this Court declines to address whether plaintiff was ostracized, at least in part, because of plaintiff's handicap.

Hence, plaintiff has not established that defendant took an adverse employment action, at least in part, because of plaintiff's handicap. Plaintiff's testimony does not demonstrate that defendant failed to enforce a smoking ban, at least in part, because of plaintiff's handicap or that the ostracism of plaintiff was an adverse employment action. Accordingly, I shall grant defendant's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED THAT CSX's motion for summary judgment be, and the same hereby is granted.

So ordered.